FACTS
Aubrey Wayne Bounds is a resident of Forrest County. Penrod Drilling Company *Page 917 
is a foreign corporation not qualified to do business in Mississippi, with principal offices in Dallas, Texas. On March 17, 1976, while he was employed by Penrod and working on a floating workover vessel off the coast of Louisiana, Bounds suffered serious personal injuries.
As a result of his injuries Bounds had a cause of action against Penrod under 46 U.S.C.A. § 688 (1976), the "Jones Act".
On December 22, 1978, Bounds filed a bill of complaint in the Chancery Court of Forrest County against Penrod under the "Jones Act", seeking money damages of $1,200,000. He based jurisdiction in the Forrest County Chancery Court by naming as "garnishee defendants" eight nationwide oil corporations, all of whom do business in this state and have registered agents for service of process.[1] He alleged that each of these "garnishee defendants" was either indebted to Penrod or had property and effects of Penrod in its possession, and which were subject to attachment and garnishment. In addition to his claim for monetary damages against Penrod, Bounds also prayed that a "judgment lien" be impressed on all property attached of the garnishee defendants in order that the same might be sold for satisfaction of the money judgment against Penrod.
Pennzoil Company and Mobil Oil Corporation filed answers on January 16, 1979, denying both any indebtedness to Penrod and possession of any property belonging to Penrod.
On January 16, 1979, counsel for both Penrod and Bounds appeared before the chancery court and made oral motion to dismiss the action against all garnishee defendants. Pursuant to this motion counsel for both these parties signed and submitted to the court an agreed decree which was signed and entered that day by the court. This decree reads:
 AGREED DECREE
 Pursuant to the joint motion of Penrod Drilling Company, The Defendant in the above styled and numbered cause, and Aubrey Wayne Bounds, the Plaintiff, ore tenus, the said Penrod Drilling Company, having entered its appearance herein, to dismiss all Garnishee-Defendants as to Penrod Drilling Company, and there being no objection thereto by the Plaintiff, it appears unto the Court that said motion should be sustained as hereinafter set forth, and it is, therefore,
 ORDERED, ADJUDGED AND DECREED that the aforesaid motion be, and is hereby, sustained and that the appearance of Penrod Drilling Company is hereby noted, with leave granted to said Defendant to file responsive pleadings to the Bill of Complaint and Attachment in Chancery filed by the Plaintiff, until on or before February 12, 1979, the next regular return date of said Court. It is further,
 ORDERED, ADJUDGED AND DECREED that all of the said Garnishee (Attachment) Defendants, as to Penrod Drilling Company, herein including the following: Texaco, Inc., Gulf Oil Corporation, Exxon Corporation, Amoco Oil Company, Mobil Oil Corporation, Pennzoil Company, Ashland Oil, Inc. and Union Oil Company of California be, and said Garnishee (attachment) Defendants as herein named be, and hereby are, each and all discharged and dismissed as Garnishee (attachment) Defendants, as to Penrod Drilling Company, without necessity of any pleadings or appearances on their part, or on the part of any of them as to said Penrod Drilling Company; and that the Writs of Garnishment, (attachment) heretofore issued herein or requested to be issued herein as to each and all of the said Garnishee (attachment) Defendants are hereby dismissed as to the Defendant Penrod Drilling Company.
 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Penrod Drilling Company, having covenanted and agreed accordingly, *Page 918 will not remove or attempt to remove this action from this Court to any other Court, including the United States District Court in any district, but this shall not preclude Penrod challenging the jurisdiction of this Court as to subject matter of this action. (emphasis added)
Despite this agreed decree Amoco Oil Company filed an answer January 26, Texaco filed an answer February 13, and Ashland filed an answer February 16, 1979, all denying any indebtedness to Penrod or possession of any property or effects of Penrod in their possession.
Penrod filed its answer February 13, 1979. It attacked chancery court jurisdiction solely on the basis that the Mississippi attachment statutes, Mississippi Code Annotated sections 11-31-1
to -11 (1972), had been declared unconstitutional. It made no specific allegation that the chancery court lacked attachment jurisdiction because none of the garnishee defendants was indebted to Penrod or had property belonging to Penrod in its possession when suit was filed. The answer contained a general denial of the allegations of the complaint against Penrod, and was under oath. No separate motion to dismiss, or to transfer the cause to a law court, was filed with the answer.[2]
Interrogatories were filed both by Bounds and Penrod, and in due course these were answered by each.
On April 21, 1980, Penrod filed a motion to dismiss, as follows:
 MOTION TO DISMISS
 Comes now the Defendant, Penrod Drilling Company, by and through its attorneys, Rushing and Guice, and moves the Court to dismiss the above styled and numbered cause without prejudice for lack of subject matter and jurisdiction.
 WHEREFORE, Defendant prays that the above styled and numbered cause be dismissed without prejudice and all costs be taxed to the Plaintiff herein.
By order dated April 25, 1980, the court reserved ruling on this motion.
Trial was had before the chancery court on November 19-20, 1980.
At the conclusion of the trial, Penrod renewed its motion to dismiss, and submitted a brief. The brief relates that in the answer of Penrod to the bill of complaint the basis of its claim of lack of subject matter jurisdiction was that the attachment statutes were unconstitutional. The entire thrust of the brief is that Bounds' sole claim against Penrod was a suit in tort for personal injuries under the Jones Act, and since the attachment statutes were unconstitutional, the chancery court lacked "subject matter" jurisdiction. It alleged subject matter jurisdiction was in a circuit court. Penrod conceded that state courts, as well as federal courts, had subject matter jurisdiction to hear causes predicated under the Jones Act, but contended the case should be in a circuit court.
Penrod supported its argument on the unconstitutionality of the attachment statutes with two cases decided by United States district courts of this state: Mississippi Chemical Corp. v.Chemical Construction Corp., 444 F. Supp. 925 (S.D.Miss. 1977); and M.P.I. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978).
The chancellor in a lengthy opinion reviewed the chronology of this case and the two United States District Court cases cited by Penrod, and then held the factors in those cases were absent in this case because no property or funds had ever been attached. Indeed, prior to the attachment issue ever being reached Penrod and Bounds submitted a consent decree to the chancery court.
The chancellor's opinion merits quotation:
 * * * * * *
 The Court finds that the factors upon which the District Court relied in Mississippi Chemical Corp., are not applicable to this case. While it is true that the attachment sub judice was invoked at the discretion of the Complainant's counsel and that no bond was posted, by the same *Page 919 
token, Penrod was not required to post any bond to dissolve the attachment, the same having been done by its voluntary agreement in the form of the Order which dismissed the garnishee-defendants. After this had been done, the Court finds that there was no necessity for review by a disinterested judicial officer or for a post procedure hearing, inasmuch as the attachments had by then been dissolved.
 The most important factor which caused the Court in Mississippi Chemical to make its holding was the fact that substantial sums of money belonging to Chemico were bound in the hands of third parties, without notice. The Court held that this constituted a deprivation of property without due process. The Court considers this to be the most important factor which distinguishes the case at bar with Mississippi Chemical. In Mississippi Chemical, large sums of money belonging to the Defendant were bound. In the case now under consideration, no funds belonging to Penrod were ever bound in the hands of the garnishee-defendants. This fact is uncontradicted in the record and is evidenced by the sworn Answers by the garnishee-defendants. The Court finds that the underlying reasons which the Mississippi Chemical
Court relied upon to invalidate the attachment procedure are not applicable here. For instance, there was no showing that the attachments were wrongfully or mistakenly used. In this regard, the Court finds that Penrod was a true nonresident of the State of Mississippi at the time of the filing of the Bill of Complaint. Further, there is no question about the binding of any sums which resulted from contracts entered into outside the State of Mississippi because no sums were ever bound.
 The Court further finds that there was no evidence of coercion or intimidation offered which may have required the Defendant to make a personal appearance
in this case. Nor can such coercion be presumed by the Court. There was no requirement that Penrod enter its appearance and if it did not intend litigate this matter before this Court, the Defendant could have simply done nothing and required the Complainant to contest the validity of each of the answers of the garnishee-defendants in order to determine if any of them possessed any property belonging to Penrod over which jurisdiction could be obtained.
 The Court therefore concludes that there has been no deprivation of property belonging to Penrod without due process for the reason that no sums belonging to it were ever bound. Neither is there a question of the wrongful attachment of money to which the Complainant is not entitled, either because of the lack of necessity for attachment, lack of merit to his claim, or excessiveness of the amount sought to be attached. Absent the general appearance which Penrod made when it filed its answer, this Court would have been powerless to make any adjudication against it whatsoever. However, by entering its appearance, Penrod cannot now complain of procedural irregularities, which this Court finds do not exist in this case. The Court therefore finds that the Defendant was not deprived of procedural due process due to the attachment which was employed in this case and therefore the Motion to Dismiss is not well taken.
 The Court further finds that once equity jurisdiction has attached, the cause may still be retained and heard on its merits and a comprehensive Decree entered, even though the equitable issues have been resolved by agreement prior to the time of hearing, leaving only legal issues to be resolved. McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 38 So.2d 325 (1949); Euclid-Miss. v. Western Casualty and Surety Company, [249 Miss. 547], 163 So.2d 676 (Miss. 1964). The Court concludes that it properly entertained jurisdiction of this cause ab initio, as there was no prohibition from the federal courts or the Mississippi Supreme Court against the use of the attachment in chancery procedure at the time of the filing of the Bill of Complaint. *Page 920 
The Court therefore finds that all parties are properly before the Court and that it has jurisdiction of the parties and of the subject matter of this cause and now proceeds to adjudicate the remaining issues between the parties. (emphasis added)
Whether any of the eight garnishee defendants in fact was either indebted to or had property of Penrod in its possession at the time suit was filed was never determined. Five answered denying, three never answered, but there was no necessity of ever addressing the issue by discovery or court hearing because Penrod and Bounds presented a consent decree to the chancery court disposing of this question.
 LAW
Did the chancellor err in holding that the Chancery Court of Forrest County had authority to hear and decide Bounds' cause of action against Penrod?
Penrod again argues that because the attachment procedures under chancery attachment statutes violate the due process clauses of the 5th and 14th amendments, the chancery court never had "subject matter jurisdiction," and therefore had no authority to hear Bounds' lawsuit against Penrod. In view of its entry of appearance, it argues that the only court which had the authority to hear this case was a circuit court.
Here, as in the chancery court, Penrod cites as authority for this contention two cases decided by United States district courts in this state: Mississippi Chemical Corp. v. ChemicalConstruction Corp., 444 F. Supp. 925 (S.D.Miss. 1977); andM.P.I. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978).
Let us first examine the attachment statutes. The pertinent portions of Mississippi Code Annotated section 11-31-1 (1972) read:
 § 11-31-1. Jurisdiction; debtors.
 The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages . . . arising ex delicto against any nonresident, . . . and persons in this state who have in their hands effects of, or are indebted to, such nonresident, . . . The court shall give a decree in personam against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.
Mississippi Code Annotated section 11-31-3 (1972) deals with the procedure for attaching effects of, or an indebtedness due a nonresident:
 § 11-31-3. How effects or indebtedness bound.
 When a bill shall be filed for an attachment of the effects of a nonresident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such nonresident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the nonresident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service. (emphasis added).
Mississippi Code Annotated section 11-31-5 (1972) provides for the levy of land belonging to the nonresident:
 § 11-31-5. How land levied upon.
 If the land of the nonresident, absent or absconding debtor be the subject of such suit, a writ of attachment shall be issued, and shall be levied by the sheriff or other officer as such writs at law are required to be levied on land, and shall have like effect.
Mississippi Chemical Corp. (Mississippi Chemical) v. ChemicalConstruction Corp. (Chemico), supra, does not support the contention *Page 921 
of Penrod, but rather the contrary. In that case Mississippi Chemical sued Chemico in the United States District Court for the Southern District of Mississippi in a diversity action, and utilizing the Mississippi attachment statutes, named as attachment defendants ten foreign corporations indebted to Chemico. Mississippi Chemical thereby attached over a million dollars in indebtednesses due Chemico by these various corporations.
Chemico moved for an order to vacate the attachments because the statutory procedure for attaching these indebtednesses was unconstitutional. The court agreed, and vacated the attachments, but retained the cause of action of Mississippi Chemical against Chemico.
The district judge held that the failure of section 11-31-3,supra, to provide for notice and an opportunity to be heard before property or debts were bound rendered the procedure for attaching property thereunder unconstitutional.
The opinion first points out that the attachment procedure might be solely against a debt, or might also be against the nonresident personally:
 This indebtedness, which is frozen once service is made upon the attachment defendants, is the res which provides the chancery court with quasi in rem jurisdiction over the non-resident principal defendant, to the extent of the indebtedness. The principal defendant may be made a party to the lawsuit merely by publication of a summons. Section 11-31-9, Mississippi Code of 1972.
 Additionally, the chancery court may acquire in personam jurisdiction over the non-resident principal defendant if personal service is made upon him, or if he enters an appearance. Section 11-31-1, Mississippi Code of 1972. Unless the non-resident principal defendant is thus subjected to the chancery court's in personam jurisdiction, judgment may be rendered against him only to the extent of the attached indebtedness.
Id. at 931 (footnote omitted).
The opinion then states the basis of Chemico's motion:
 Initially, the Defendant contends that the Attachments in Chancery procedures under attack herein deprive Chemico of property under color of state law and must therefore be accompanied by procedural due process. This Court concurs.
Id. at 933 (emphasis added).
This scholarly opinion then details the reasons why under the United States Constitution notice and an opportunity to be heard must be provided for before property is seized under an attachment statute.
Did the district court nevertheless have authority, or "jurisdiction" to proceed with the lawsuit? Indeed it did, and this was never contested by Chemico. It had been served with process under the long arm statute. The court stated:
 In the case before the Court Chemico is a foreign corporation which not only may be, but was in fact served under Mississippi's long arm statute.
Id. at 937.
 * * * * * *
 In the case sub judice, Chemico does not question this Court's jurisdiction because it has been served through its resident agent in Mississippi.
Id. at 943.
In Mississippi Chemical we thus have a court vacating the attachment of property, but retaining jurisdiction to hear the primary cause of action.
In M.P.I. v. McCullough, supra, a Texas resident named Dupre sued a Texas corporation, M.P.I., in the Chancery Court of Chickasaw County for a sum of money and specific performance under a contract made between the parties in Texas and which was entirely performed outside the state of Mississippi. The basis for the chancery court action in Chickasaw County, Mississippi, was a manufacturing plant owned and operated by M.P.I. in Chickasaw County, and which was levied upon under Mississippi Code Annotated § 11-31-5, supra.
M.P.I. then filed suit against the chancery clerk, sheriff, and Dupre in the United *Page 922 
States district court not only to restrain the attachment, but also to enjoin Dupre from proceeding in the state court action.
Again, in a scholarly opinion, the court held that the attachment procedure authorizing the levy upon and attachment of land without requiring notice and an opportunity to be heard violated due process.
The district court did not, however, enjoin Dupre from proceeding in the chancery court. The court stated: "We hold that the attachment procedure is unconstitutional, and that we, as a federal district court, have the power and authority, and should exercise it, to restrain the enforcement of the constitutionally impermissible procedure, but without otherwise interfering with the prosecution of the state court action. Id. at 888.[3]
In the instant case, Bounds based his cause of action against Penrod in the Chancery Court of Forrest County upon two grounds: (1) his claim for personal injuries under the Jones Act; (2) debts due Penrod by foreign corporations authorized to do business in Mississippi.
As the chancellor so lucidly observed in his opinion, Penrod could have challenged the attachment procedure, but did not. Furthermore, there was no requirement for Penrod to enter its appearance, but it chose to do so.[4]
By agreement of the parties, solemnized by court decree, all attachment proceedings were dispensed with, and Penrod voluntarily entered its personal appearance and covenanted not to attempt to remove the case.
Any attachment impediment being thus removed, the only question remaining before the chancellor was his authority to proceed with the primary case: Bounds' claim under the Jones Act.
The agreed decree, prior to any property or debt having ever been attached or bound, put the parties in the same position they would have been if the suit had been filed in chancery court in the absence of any attachment.
Such a suit undoubtedly would have been subject to transfer or dismissal, but when the defendant voluntarily entered its appearance and covenanted — insofar as it was concerned — not to attempt to remove the case, the sole question remaining is whether or not the chancellor had jurisdiction to proceed.
"Jurisdiction" is a broad term, and has been defined in countless ways by courts. Generally speaking, it means the power or authority of a court to hear and decide a case. Black's Law Dictionary 991 (rev. 4th ed. 1968); 50 C.J.S. Jurisdiction
(1947); 21 C.J.S. Courts, §§ 15, 23, 35 (1940); Grenada Bankv. Petty, 174 Miss. 415, 164 So. 316 (1935); Leake CountyCooperative v. Dependents of Barrett, 226 So.2d 608 (Miss. 1969), on petition for rehearing.
We cannot escape the conclusion that under our Constitution the chancery court was authorized to proceed with the trial of this case.
Article 6, Section 147 of our Mississippi Constitution provides:
 No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; but if the Supreme Court shall find error in the proceedings *Page 923 
other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to that court which, in its opinion, can best determine the controversy.
Penrod concedes, as indeed it must, that its voluntary appearance and answer operated to give a court of this state power to hear this case. Its only remaining argument can be that the case was in the wrong court.
In our decisions under this section of the Constitution, not only have we held that the error in filing a common law suit in chancery did not render the suit subject to dismissal, but moreover, it was not even subject to reversal on this ground.See, e.g., McLean v. Green, 352 So.2d 1312 (Miss. 1977);Mathews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957);Boyett v. Boyett, 152 Miss. 201, 119 So. 299 (1928), on suggestion of error (suggestion of error overruled); Talbot Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186,113 So. 433 (1927); Hancock v. Dodge, 85 Miss. 228, 37 So. 711 (1905); and Cazeneuve v. Curell, 70 Miss. 521, 13 So. 32 (1893).
Language in the last-cited case is particularly appropriate to the instant case:
 We find here practical authority for the virtual obliteration of the lines of demarcation between courts of law and equity, if the judges and chancellors of the inferior courts choose to disregard, or fail to observe, those distinguishing lines. And this court is forbidden to reverse or annul decrees or judgments rendered in the lower courts, even if there was want of jurisdiction, if no other error than want of jurisdiction is to be found.
 * * * * * *
 The language is plain, unambiguous, all-comprehensive. The purpose of this 147th section of the constitution is to prevent reversals because of want of jurisdiction in the court below.
Id. at 524-25, 13 So. at 33.
We have no doubt but that presently there are many cases pending in chancery courts of this state in which the circuit court would be the more appropriate forum, but if there is no objection by the parties, the chancellor of his own motion is not required to transfer the cause, but may hear and determine the issues and render a valid decree.
Penrod's assertion that because attachment procedures have been declared unconstitutional, the chancery court had no power to hear and determine this case, after it had voluntarily entered its appearance and covenanted to make no attempt to remove the primary cause of action, is completely unpersuasive.
We have held that when a court lacks "subject matter jurisdiction", it has no authority whatever to hear a case.Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (1955).
If we followed the argument of Penrod, it would mean that the final decrees in thousands of cases which have been tried in a chancery court of this state in which a circuit court would have been the more appropriate forum, yet the parties offered no objection and filed no motions to transfer or dismiss, are void.
We therefore hold that any court decision or holding that the former attachment procedures under our chancery attachment statutes were unconstitutional is irrelevant under the facts of this case.
AFFIRMED.
BOWLING and DAN M. LEE, JJ., concur.
PRATHER and ROBERTSON, JJ., specially concur.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, J., dissent.
[1] Texaco, Inc.,; Gulf Oil Corporation; Exxon Corporation; Amoco Oil Company; Mobil Oil Corporation; Pennzoil Company, Ashland Oil, Inc.; and Union Oil Company of California.
[2] Indeed, Penrod had previously agreed not to seek a transfer in the January 16, 1979, decree.
[3] Following these decisions, the Mississippi Legislature amended the procedures for attaching indebtednesses and property under our attachment statute, thereby curing the problems set forth in these cases. See 1980 Miss. Laws ch. 467, codified as Miss. Code Ann. §§ 11-31-2 (Supp. 1982), 11-31-3 (Supp. 1982),11-31-5 (Supp. 1982), and 11-31-9 (Supp. 1982). Miss. Code Ann. §11-31-1 (1972), however, was not amended.
[4] Bounds had a dubious basis to proceed against Penrod inany court in Mississippi, whether chancery, circuit or United States district court. Penrod was a foreign corporation, had not qualified to, and did no business in Mississippi. The cause of action accrued for an injury which occurred altogether outside Mississippi, and had no connection with this state. Further, process on Penrod was by publication.