462 So.2d 696 (1984)
ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, A Louisiana Corporation
v.
Duane COOLEY.
No. 54500.
Supreme Court of Mississippi.
December 12, 1984.
Rehearing Denied February 13, 1985.
*697 Carey R. Varnado, Easterling & Varnado, Hattiesburg, for appellant.
*698 J. Robert Ramsay, Bryant, Stennis & Colingo, Hattiesburg, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This interlocutory appeal presents the question whether New Orleans-based Tulane University may, consistent with the Constitution of the United States, be made amenable to valid and enforceable adjudications of its important rights and duties in the courts of the State of Mississippi.
Plaintiff Duane Cooley seeks recovery for the alleged wrongful death of his wife, Judy Billingsly Cooley. He has brought an attachment action in the Chancery Court of Forrest County under Miss. Code Ann. § 11-31-1, et seq. (Supp. 1984), a quasi in rem proceeding, if you will. Pursuant thereto, there have been seized and brought within the power of the Court the proceeds of debts owed to Tulane by Mississippi parties having an aggregate value of $147,677.50. Cooley seeks no in personam judgment against Tulane nor any other recovery of and from Tulane beyond the debts attached.
Tulane strenuously argues that the Chancery Court's efforts to subject its property to jurisdiction are inconsistent with Tulane's rights under the due process clause of the Fourteenth Amendment to the Constitution of the United States, upon which there has been recent authoritative elaboration in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
For the reasons set forth below, we find Tulane's arguments without merit and affirm.

II

A.
On June 2, 1981, Duane Cooley as personal representative of Judy Billingsley Cooley, deceased, commenced this wrongful death action by filing his complaint in the Chancery Court of Forrest County, Mississippi. Cooley has since amended his complaint. Defendants below were Hattiesburg Clinic, P.A., a professional association doing business in Forrest County, Mississippi, and The Administrators of the Tulane Educational Fund, A Louisiana Corporation (herein "Tulane University" or sometimes "Tulane"). Tulane is the sole Appellant here.
Subject matter jurisdiction has been predicated upon the Chancery Attachment Statute, Miss. Code Ann. §§ 11-31-1, et seq. (Supp. 1984), pursuant to which Cooley demanded that the court attach and bring before it certain effects of, or indebtednesses owed to, Tulane University said to be located in Mississippi.
Two such indebtednesses of the nonresident defendant Tulane University have in fact been seized and brought within the control of the court. These are:
(A) The sum of $48,182.00 owed to Tulane University arising out of an intercollegiate athletic contest between the football teams of the University of Southern Mississippi and Tulane University. The record reflects that the game was played in Hattiesburg, Mississippi, and that the sums due and payable to Tulane were in the hands of the University of Southern Mississippi when the attachment process issuing out of the Chancery Court was served and thereby effectively bound such sums to await the outcome of this action.
(B) The sum of $99,495.50 which is owed to Tulane University by virtue of unpaid for medical care, treatment and services rendered to the late Judy Cooley by Tulane Hospital and Medical Center. These sums were seized while in the hands of Gibson's Storeowners Association Employer Benefit Trust, hereinafter "Gibson's Trust". Judy Cooley during her lifetime was an employee of Gibson's Distributors of Hattiesburg, Inc., hereinafter "Gibson's Hattiesburg", a Mississippi corporation. As such, she was covered by a health insurance policy procured by Gibson's Trust. The care and *699 treatment and hospitalization services rendered to Judy Cooley were covered by this health insurance plan. Pursuant to that policy, Gibson's Trust owed $99,495.50 to Tulane and, before said sums were paid, process of attachment issuing out of the Chancery Court of Forrest County was served upon Gibson's Trust subjecting said sums to the jurisdiction of the Court during the pendency of this action.
All attachment defendants, having paid into the registry of the Court the moneys owed Tulane, have been finally dismissed from this action.

B.
The facts relevant to the issue tendered on this interlocutory appeal have to do with Tulane's activities in, and contacts with, the State of Mississippi. Many of these facts we glean from the record. Others are within our judicial knowledge.
This Court, of course, may take judicial notice of adjudicative facts at any stage of the proceedings, whether requested to do so by a party or not. Moore v. Grillis, 205 Miss. 865, 39 So.2d 505 (1949). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within this state or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
To begin with, indebtednesses to the aggregate tune of some $147,677.50 were found and seized in Forrest County. These valuable properties owned by Tulane certainly represent contacts with Mississippi. There is much more.
Tulane University is a private, non-sectarian university comprising 11 academic divisions with close to 10,000 students. The university has been duly organized and exists as an educational corporation under the laws of the State of Louisiana. As all know, Tulane's principal place of business is in New Orleans, Louisiana.
As the crow flies, Tulane is less than a hundred miles from parts of southern and southwestern Mississippi. It is within the actual as well as judicial knowledge of the members of this Court that, although the nerve center of Tulane's educational and service programs is in Louisiana, the university has a variety of contacts with Mississippi and engages in a plethora of activities in and related to Mississippi.
Most basic is the educational function of the university. Tulane recruits Mississippi students. Because of its excellent reputation in all academic areas, Tulane is successful in this endeavor. It offers scholarships to Mississippi citizens incident to their pursuit of the educational opportunities available at Tulane.
Tulane engages in substantial continuing education programs. The different colleges and schools of the university invite citizens of this state to participate in seminars and continuing education programs[1]. Fees are charged those taking part in these programs. Tulane students engage in a variety of intercollegiate competitions with students from Mississippi's colleges and universities. Most familiar are the athletic contests, wherein almost annually Tulane competes with the University of Southern Mississippi, Mississippi State University, the University of Mississippi and other Mississippi schools in football, basketball and other sports. These competitions take place in accordance with contracts often made a year or more in advance and involving guarantees of and entitlements to substantial sums of money. Many of these contests take place within the State of Mississippi[2].
Tulane is a member of an intercollegiate athletic conference, the Metro Athletic Conference, which also has as one of its members *700 the University of Southern Mississippi.
Beyond athletics, there are any number of other forms of intercollegiate competitions between Tulane and Mississippi schools. There are Tulane faculty members who participate in a variety of educational programs, seminars and conferences within the State of Mississippi. Conversely, Mississippians are invited to and participate in comparable programs at Tulane.
Perhaps most important of all, we take judicial notice that Tulane has substantial numbers of alumni and friends in this state, primarily on the Mississippi Gulf Coast and in south and southwest Mississippi. Tulane regularly solicits and receives financial contributions and other forms of gifts from these Mississippians, and derives great benefit therefrom.
One of the educational and service functions performed by Tulane has been the operation of a School of Medicine, in connection with which Tulane operates the Tulane Hospital and Medical Center.
The Tulane School of Medicine operates a program whereby senior medical students and residents may receive on the job training with Mississippi doctors and hospitals. Some Tulane medical students or residents are trained at the University of Mississippi Hospital, Jackson, Mississippi, Veterans Administration Medical Center, Biloxi, Mississippi; and Keesler Air Force Base Hospital, Biloxi, Mississippi.
Tulane faculty members provide lectures at Biloxi hospitals on a monthly basis, and ophthalmology residents rotate on a short term basis through the VA Hospital in Biloxi. In addition, the record reflects that Tulane faculty members conduct medical seminars in Meridian, Mississippi.
Tulane conducts continuing medical education programs to which it invites physicians, surgeons and others from all fifty states, including Mississippi. There are some 63 physicians who are members of the staff at Tulane Medical Center who reside in Mississippi.
The Tulane Hospital provides care and treatment for patients who reside in Mississippi. One such patient was Judy Cooley who was treated originally at the Hattiesburg, Mississippi Clinic and on November 12, 1980, was moved to and admitted to the hospital at the Tulane Medical Center where, Plaintiff alleges, she failed to receive the requisite quality of care and consequently died.
In 1976 Tulane opened the Tulane Medical Center Hospital. It represents this 300-bed general hospital to feature the latest in diagnostic and treatment facilities for the patients of the Tulane School of Medicine. Private, semi-private and private with sitting room accommodations are provided.
Plaintiff attempted through discovery to develop the extent to which Tulane receives and accepts patients from the State of Mississippi, but Tulane was successful in concealing this information[3].

C.
On August 4, 1982, Tulane moved to dismiss Cooley's complaint. The motion urged, inter alia, that Tulane had never qualified to do business within this state; had never done business in Mississippi; has never solicited business in nor placed any advertisement in any publication printed in Mississippi; has never maintained any office, bank account, mailing address, telephone listing, or other business facility in Mississippi; and, in general, had insufficient contacts with Mississippi, to render it constitutionally amenable to judicial jurisdiction[4].
On October 7, 1982, the Chancery Court of Forrest County issued an order overruling Tulane's motion to dismiss. The Chancery *701 Court found that Tulane has been engaged in continuous and systematic activity within the State of Mississippi. Specifically the chancellor found these activities to be: (1) That Tulane has an affiliation with Mississippi hospitals where several courses are taught in Mississippi to Tulane students; (2) Tulane advertises that clinical courses are taught in Mississippi; (3) Tulane regularly engages in athletic contests with Mississippi schools from which it derives substantial revenue; (4) Tulane has purposefully availed itself of the privileges of conducting activities within this state; (5) even if Tulane had no contacts, ties or relations with Mississippi, the money attached that was in the hands of Gibson's Trust and Gibson's Hattiesburg was sufficiently related to the cause of action to sustain quasi in rem jurisdiction of this case against Tulane; (6) the State of Mississippi has a substantial interest in providing a forum to its citizens harmed by negligent acts of others; (7) the basic equities of this case dictate that the exercise of jurisdiction by the Forrest County Chancery Court is not unfair or unreasonable; (8) requiring the plaintiff to pursue separate causes of action, one in Louisiana and one in Mississippi, against these two alleged joint tortfeasors would serve neither judicial economy nor basic fairness.
On October 16, 1982, the Chancery Court of Forrest County issued an order granting Tulane an interlocutory appeal to this Court.

III.
Tulane first challenges the Chancery Court's determination that it has subject matter jurisdiction of this civil action. Tulane reasons that its conduct upon which Cooley's claim of liability has been predicated occurred in Louisiana; therefore, Louisiana substantive law in the form of the Louisiana Medical Malpractice Act, La. Rev.Stat. 40:1299.41, et seq. controls the rights and duties of the parties. Therefore, pursuant to the terms of the Louisiana act, this claim does not lie within the subject matter jurisdiction of the Chancery Court of Forrest County, Mississippi until the claim has been submitted to a medical review panel.
Tulane's thesis belies a fundamental misunderstanding of the concept of subject matter jurisdiction. Simply put, Louisiana has no authority to enact legislation which would affect the subject matter jurisdiction of Mississippi courts.
Cooley invoked the subject matter jurisdiction created by our familiar chancery attachment statutes. Miss. Code Ann. §§ 11-31-1, et seq. (Supp. 1984). His complaint alleged that Tulane was a non-resident debtor within the meaning of Section 11-31-1. The complaint further alleged that there are persons in this state, to-wit: the University of Southern Mississippi and The Gibson's Trust, which hold effects of or were indebted to Tulane. The fact of the existence in Forrest County, Mississippi, of these effects and indebtednesses has been established and, as previously noted, they have been seized and paid into the registry of the Chancery Court. The subject matter jurisdiction of the Chancery Court has thereby been established. Crescent Plywood Co. v. Lawrence, 305 So.2d 343, 346-347 (Miss. 1974); see also, Penrod Drilling Co. v. Bounds, 433 So.2d 916, 925 (Miss. 1983).
The point Tulane makes regarding the applicability of the Louisiana Malpractice Act concerns the choice-of-law issue that must ultimately be confronted by the trial court but which we regard as premature at this time.

IV.

A.
The dispositive question presented on this interlocutory appeal concerns the federal constitutional amenability of Tulane University to the adjudication of its important rights in the courts of Mississippi.
In former days the federal constitutional amenability question would have turned solely on the matter of state power over the res. If the non-resident defendant owned property in the forum state and if *702 that property had been seized in compliance with the law of the state, the courts of the state were thought to have full authority to make a valid and enforceable adjudication regarding the non-resident's rights in the res. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); O.B. Gough v. Mabsco, Inc., 335 So.2d 910 (Miss. 1976).
This power theory has now been "undermined", Shaffer v. Heitner, 433 U.S. 186, 211, 97 S.Ct. 2569, 53 L.Ed.2d 683, 702 (1977), so that something more than a seized res must be shown. Established constitutional doctrine now provides that non-residents such as Tulane, owning property in a foreign state, may not be subjected to adjudications of their rights in that property by the courts of the state in which the property is found, unless they have such contacts with the forum state as would satisfy the requirements of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and progeny. This right  "immunity" might be a more accurate term  is secured to Tulane by the due process clause of the Fourteenth Amendment to the Constitution of the United States.
The familiar and oft quoted general principle is that a nonresident may not be subjected to a litigation in a foreign jurisdiction unless he has "certain minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice". International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945). This fairness test, in addition to the old power test, must be met and passed before our courts have the authority to enter a valid and binding adjudication with respect to Tulane's rights in the $147,677.50 seized via this quasi in rem proceeding. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Rush v. Savchuck, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
There is no set formula for resolution of this fairness inquiry. Shaffer repeatedly suggests that we must focus our attention upon "the relationship among the defendant, the forum, and the litigation." 433 U.S. at 204, 207, 97 S.Ct. at 2579, 2581, 53 L.Ed.2d at 698, 700. This Shaffer suggestion enables us to dispatch two red herrings  one offered by Cooley, the other by Tulane.
First, notice that the tripartite relationship Shaffer would have us focus upon does not include the plaintiff. Nothing in Shaffer authorizes us to consider Cooley's interest, wholly legitimate in other contexts, in securing a forum, nor are we concerned with any Mississippi interest in providing a forum for its citizens when asserting claims against non-residents. Cooley could sue Tulane in Louisiana, whose courts are no less capable of the fair administration of justice than are ours. Cooley has no interest in securing a convenient forum, nor has this state any interest in providing Cooley a forum, which may overcome Tulane's due process right/immunity articulated in Shaffer[5]. This principle was settled in Kulko v. California Superior Court, 436 U.S. 84, 98-100, 98 S.Ct. 1690, 1700-01, 56 L.Ed.2d 132, 145-146 (1978) which made it clear that the points argued, though highly relevant on choice-of-law and venue issues, are irrelevant to our judicial jurisdictional inquiry. See Shaffer v. Heitner, 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683, 704-705 (1977); Hanson v. Denckla, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).
Cooley puts the point another way. He notes that Hattiesburg Clinic, P.A., is also a Defendant and argues that he would be inconvenienced in the extreme if he were prevented from suing the two Defendants together in the same forum. The argument glosses over the fact that we are here *703 concerned with rights vested in Tulane. Those rights may not be cut down because Cooley has joined a Mississippi Defendant[6]. The presence of Hattiesburg Clinic, P.A., in the case is relevant only insofar as its relationship with Tulane may supply "contacts" to be considered in passing on Tulane's due process claim. Tulane invokes a right. That we have eschewed any mechanical formulation of that right in no way means we may look to the interests of the plaintiff or the forum in determining its contours and whether it has been offended. See Read v. State, 430 So.2d 832, 840 (Miss. 1983).
Conversely, a significant omission from Shaffer's three part relational inquiry is any requirement of a direct relationship between the res seized and the litigation. Shaffer makes clear that there are some cases where the presence in the forum state of the non-resident's property related to the litigation will in and of itself suffice to satisfy the minimum contacts standard. Shaffer v. Heitner, 433 U.S. at 207-208, 53 L.Ed.2d at 700. The converse, however, does not follow.
That the allegedly tortious conduct of Tulane occurred in New Orleans, Louisiana, and not in Mississippi  a fact heavily relied upon by Tulane  is per se of no constitutional consequence[7]. Similarly, the fact that there is no substantial connection between the property owned by Tulane in this state and seized by the process of the court and the operative events giving rise to Cooley's claim of liability on the part of Tulane is per se of no constitutional consequence. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Aycock v. Louisiana Aircraft, Inc., 617 F.2d 432 (5th Cir.1980); Braman v. Mary Hitchcock Memorial Hospital, 631 F.2d 6, 8 (2d Cir.1980). Cf. Arrow Food Distributors, Inc. v. Love, 361 So.2d 324 (Miss. 1978); see also Penrod Drilling Co. v. Bounds, 433 So.2d 916 (Miss. 1983).
Tulane may be subject to an adjudication of its rights in the property seized only if, in addition to the seizure of that property, Tulane has contacts with Mississippi such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).
In recent years the fairness test of International Shoe has been considerably refined. Although we continue to speak of minimum contacts, we are careful to exclude "fortuitous" contacts and circumstances. If the non-resident defendant's contacts are fortuitous, not deliberate, de minimis, not substantial, they do not give rise to judicial jurisdiction. Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 500 (1980).
The U.S. Court of Appeals for the Eighth Circuit, in Iowa Electric Light and Power Company v. Atlas Corporation, 603 F.2d 1301 (8th Cir.1979) has aptly added a caveat:
[T]he minimum contacts relied upon must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state. 603 F.2d at 1303 fn. 3.
*704 Of course, the principal manner in which a non-resident may have contacts with the forum state is via contacts with its citizens. Still, the distinction noted in Iowa Electric is important.
In recent years two descriptions of the fairness test have achieved a currency and usefulness: the purposeful activities test and the foreseeability test. In Hansen v. Denckla, supra, the Supreme Court has said that it is fair that a non-resident defendant be subject to an adjudication of his important rights and duties in the forum state where that defendant has "purposefully availed itself of the privilege of conducting activities within the forum state". 357 U.S. at 253. Worldwide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. These "purposeful activities" should be kept distinct and separate from the "unilateral activity of those who claim some relationship with a nonresident defendant [by virtue of which they] cannot satisfy the requirement of contact with the forum state". Hanson v. Denckla, 357 U.S. at 253; 78 S.Ct. at 1239; Benjamin v. Western Boat Building Corporation, 472 F.2d 723, 730 (5th Cir.1973).
The foreseeability test derives from Worldwide Volkswagen where the Supreme Court stated that the
"foreseeability that is relevant to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.
In sum, we find it firmly established that no state's court may make valid and enforceable adjudications of the important rights of non-residents if such would be inconsistent with the non-resident defendant's due process rights as articulated in International Shoe and progeny. This is so whether the plaintiff proceeds in personam against the non-resident or, as here, via a quasi in rem attachment action. Since Shaffer the test is the same. Before any court of this state may subject Tulane to any form of judicial jurisdiction  in personam or quasi in rem  the International Shoe originated minimum contacts/purposeful activities/foreseeability/basic fairness formulation of due process must be inquired into and Tulane's rights and immunities wholly respected.

B.
We turn now to the facts of this case and the examination of those facts under the legal principles just discussed.
To begin with, Tulane owns funds in Mississippi to the tune of some $147,677.50. Beyond that, we have found that Tulane University is and has been engaged in systematic, continuous and purposeful activities within the State of Mississippi. These activities have been enumerated in some detail in Section II(B) at the outset of this opinion.
By way of summary, Tulane engages in a wide variety of educational functions involving the recruitment and education of students from Mississippi, the encouragement of alumni activities in Mississippi, including the solicitation of and acceptance of funds from alumni and friends in this state, a variety of intercollegiate competitions and activities, formally and informally, with private and public institutions of the State of Mississippi.
More specifically, the medical school and the Tulane Hospital maintain a variety of ongoing connections with hospitals in the State of Mississippi, with medical practitioners within Mississippi, and with the treatment of patients from Mississippi. Even in the instance of activities conducted at the New Orleans facilities, there are reasonably foreseeable effects in Mississippi, ranging from the response of Mississippi patients to treatments following their return home to the billing of Mississippi residents at their addresses in Mississippi for services rendered.
One important attribute of Tulane's activities in and contacts with Mississippi  those related to the hospital and medical school as well as others not so related  is *705 that they are reasonably susceptible to giving rise to litigable disputes. Suffice it to say that Tulane would find the courts of this state open should it have need of such to enforce a claim or right arising out of its Mississippi contacts or activities.
Without further ado, we hold that, on these facts, the Chancellor was imminently correct when he held that Tulane University had engaged in continuous and purposeful activities within the State of Mississippi sufficient to render it constitutionally amenable to an adjudication of its rights in the funds held by the Clerk of the Court.
For many of the same reasons, Tulane has sufficient contacts with the State of Mississippi that it should reasonably forsee being required to defend an action in the courts of Mississippi and so that the maintenance of this action would not offend traditional notions of fair play and substantial justice.

C.
We have considered the argument that, subjecting Tulane to suit in Mississippi may have a chilling effect on Tulane Hospital's continued provision of hospitalization and other health care services to residents of Mississippi. The point is without merit, legally and factually. That a non-resident may threaten to terminate contacts with a given state in no way enhances its due process rights beyond the formulations provided in International Shoe and progeny. Factually, Tulane has no more to fear from the courts of this state than it does from Louisiana courts. Tulane will receive the same evenhanded justice it would receive in Louisiana, the same as a Mississippi university or hospital would receive here.
Further, nothing turns on the fact that Tulane is not a corporation organized for profit. Substantial and purposeful activities in this state make it reasonably forseeable that Tulane may be sued here, whether those activities were intended to, or did, result in profit. Put another way, non-profit corporations enjoy the same protections under International Shoe and progeny as do corporations organized for profit, no greater, no less.
Nothing in Tulane's motion to dismiss or on this interlocutory appeal turns on the merits vel non of Cooley's claim or Tulane's defense. That we may perceive Cooley's claim strong or weak or Tulane's conduct laudatory or egregious is for the moment beside the point. We are concerned here with a preliminary point  whether the Chancery Court of Forrest County has the authority, consistent with Tulane's due process rights, to make a valid and enforceable adjudication of the merits vel non of Cooley's claim and Tulane's defense and ultimately of Tulane's rights in the property seized.
Finally, nothing turns on the fact that the great bulk of Tulane's activities take place in Louisiana, that its nerve center is in New Orleans. To be sure, the extent of activities engaged in by Tulane in Mississippi is relatively small vis-a-vis Louisiana. Tulane's amenability to suit in Mississippi turns on the extent of its activities here without regard to what or how much more it may do in Louisiana or elsewhere.

D.
In making our determination that the Chancery Court of Forrest County, Mississippi, has authority to hear and adjudicate the rights and interests of the parties in the sum of $147,677.50 presently resting in the registry of the Court, we have given careful consideration to the reported cases concerning non-resident medical facilities.
Braman v. Mary Hitchcock Hospital, 631 F.2d 6 (2d Cir.1980) bears similarities to the case at bar. In that case the plaintiff, a citizen of Vermont, brought suit in Vermont against a New Hampshire hospital charging negligent care in New Hampshire. Hitchcock Hospital had more contacts with Vermont than Tulane Hospital has with Mississippi. Approximately one-third of Hitchcock's patients came from Vermont. Tulane has successfully resisted discovery to the extent that we do not know what percentage of its 300 beds have *706 been occupied by Mississippians in recent years. On the facts before it, the Court of Appeals for the Second Circuit correctly held that the New Hampshire hospital was constitutionally amenable to suit in Vermont.
In Soares v. Roberts, 417 F. Supp. 304 (D.R.I., 1976) a non-profit Massachusetts medical facility had been sued in Rhode Island. The evidence reflected that the defendant, largely an abortion clinic, had advertised for and solicited patients from Rhode Island for some three years prior to the suit. The non-resident defendant was held constitutionally amenable to suit in Rhode Island.
On the other hand, Wolf v. Richmond County Hospital Authority, 745 F.2d 904 (4th Cir.1984) arguably supports Tulane's position. The question in Wolf was whether an Augusta, Georgia hospital's contacts with South Carolina were sufficient to render the hospital constitutionally amenable to suit in South Carolina for allegedly negligent care rendered a South Carolina resident while a patient in the hospital in Augusta, Georgia. In the face of proof that the hospital received roughly one-fifth of its gross income from South Carolina patients, the Court of Appeals held it was not subject to suit in South Carolina. To like effect is Walters v. St. Elizabeth Hospital Medical Center, 543 F. Supp. 559 (W.D.Pa. 1982).
We distinguish Wolf and Walters from the case at bar. In Wolf and Walters the only contacts being examined were the hospital's. Here the defendant is the corporate entity, Tulane University. We look not only at the Mississippi-oriented contacts and activities of the Tulane Hospital but of the entire university.
The only case we have found in which a university hospital was the defendant is Gelineau v. New York University Hospital, 375 F. Supp. 661 (D.N.J. 1974). In Gelineau the District Court held that New York University Hospital was not constitutionally amenable to suit in New Jersey when sued by a New Jersey resident for allegedly negligent care in New York. Inexplicably, the Court seems to consider only the hospital's contacts with New Jersey rather than the totality of New Jersey-oriented contacts and activities of the corporate entity, New York University. In this we regard Gelineau as having been incorrectly analyzed and, accordingly, incorrectly decided.
All things considered, nothing in any of these hospital cases undermines our confidence in the correctness of our adjudication on this interlocutory appeal: that under the totality of the circumstances, Tulane may be held constitutionally amenable to the adjudication in the Chancery Court of Forrest County, Mississippi, of its rights in and to the $147,677.50 now held in the registry of the Court. The Chancellor correctly overruled the motion to dismiss.

V.
Tulane next argues that the doctrine of soverign immunity precludes this suit. Fleshed out, the theory is that the University of Southern Mississippi and the Board of Trustees of Institutions of Higher Learning, State of Mississippi, enjoyed sovereign immunity at the time the $48,182.00 in football game proceeds were attached[8].
Sovereign immunity is a defense "personal" to the state or its political subdivision. No third party has standing to invoke it. After a few preliminary skirmishes, the record reflects that USM and the Board of Trustees have waived sovereign immunity, have paid into the registry of the court all sums they held due and owing to Tulane, and have been finally dismissed. In this context, Tulane's point is seen wholly without merit.

VI.
No other point presented by Tulane being worthy of mention, the Order of the Chancery Court of Forrest County, Mississippi, *707 entered October 7, 1982, overruling and denying Tulane's motion to dismiss shall be, and the same hereby is, affirmed. This matter is remanded to the active docket of the Chancery Court for such further proceedings as may be appropriate.
AFFIRMED AND REMANDED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
SULLIVAN, J., not participating.
NOTES
[1] During the pendency of this action, a member of this Court has received a flier from the Tulane School of Law announcing a continuing legal education seminar, and soliciting his attendance and participation, for a fee.
[2] On the afternoon of September 27, 1980, the writer of this opinion personally witnessed the Tulane football team doing substantial "business" in Oxford, Mississippi, as it defeated Ole Miss 26-24 in a miserable, drizzling rain.
[3] Within our knowledge are the facts of T.C.L., Inc. v. Lacoste, 431 So.2d 918, 920 (Miss. 1983) wherein a Mississippi patient died while a patient at Tulane Medical Center in 1979.
[4] The term "judicial jurisdiction" is an umbrella term that includes the familiar in personam jurisdiction, in rem jurisdiction, and quasi in rem jurisdiction. Penrod Drilling Co. v. Bounds, 433 So.2d 916, 925 fn. 3 (Miss. 1983) (Robertson, J., concurring).
[5] For the reasons stated above, the Chancellor erred as a matter of law when, in his Order of October 7, 1982, he relied on Mississippi's interest in providing a forum to its citizens harmed by negligent acts of non-residents. As will be explained below, this error is not fatal.
[6] For the reasons stated above, the Chancellor erred as a matter of law when he premised the order appealed from in part on the notion that requiring Cooley to pursue separate actions would serve neither judicial economy nor basic fairness. Because we here adjudicate a claim of right or immunity constitutionally vested in Tulane, these factors  however important they may be in other contexts  simply may not be invoked to subject to jurisdiction one lacking International Shoe-style minimum contacts. This error, too, is not fatal.
[7] The Chancellor erred as a matter of law when he held that the insurance proceeds attached in the hands of Gibson's Trust were sufficiently related to the cause of action to sustain quasi in rem jurisdiction. Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). That "property" in no way resulted from activities of Tulane in Mississippi or contacts of Tulane with this state. It was procured by Judy Cooley's employer for her benefit wholly apart from anything Tulane has ever done in this state. See Shaffer v. Heitner, 433 U.S. 186, 207-208, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683, 700 (1977). Again, the error is not fatal.
[8] This suit was brought prior to the July 1, 1984, effective date for the abolition of sovereign immunity. Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982).