523 So.2d 1024 (1988)
Edwina Ford ANDERSON
v.
SONAT EXPLORATION CO. and Anita Ford Rudolph.
No. 57187.
Supreme Court of Mississippi.
April 20, 1988.
*1025 Kim T. Chaze, Hattiesburg, for appellant.
Maurice Dantin, Forest M. Dantin, Dantin & Dantin, Columbia, for appellee.
Before HAWKINS, ANDERSON and GRIFFIN, JJ.
ANDERSON, Justice, for the court:
This is an appeal from a decree of the Chancellor of Lamar County dismissing the bill of plaintiff Edwina Ford Anderson.
At the time of the actions complained of in this suit, plaintiff/appellant Mrs. Anderson was an 86 year old woman living in Lamar County, MS. Her niece, defendant/appellee Anita Ford Rudolph, lived in Angie, LA. At about this time, Edwina decided to make a gift of certain land interests in Washington Parish, LA to her niece Anita. Precisely what she intended to convey is in controversy. The upshot, however, was that Anita had her attorneys in Louisiana prepare a document to be presented to Edwina and executed by her. This document's face declares it to be a "donation inter vivos". It purports to convey Edwina's entire interest in certain tracts of real estate in Washington Parish, LA totalling slightly over 210 acres, to her niece Anita Ford Rudolph.
It is undisputed that on October 23, 1981, Anita and her husband took this document to their aunt's residence in Lamar County and presented it to her. The three of them went to the office of the chancery clerk in Purvis, MS where the instrument was executed according to law and notarized by the deputy chancery clerk.
On July 29, 1985, Edwina filed her bill in the Chancery Court of Lamar County praying that the gifts be set aside, or in the alternative reformed to reflect her true intent. She contended that she had meant to convey only part of the land to her niece, while reserving all the mineral estate to herself. Edwina alleged, however, that her niece deceitfully presented her with a document that had the effect of conveying all of her interest to Anita.
The bill joined Sonat Exploration Co., a foreign corporation licensed to do business in Mississippi, as a codefendant, because it allegedly is the payor of certain mineral royalties owned by Anita, out of which any damages and/or expenses of Edwina are to be satisfied. The affidavit supporting the application for an order of attachment states that Edwina is unaware of the amount of the royalties.
The chancellor issued an order attaching any royalties payable to Anita Ford Rudolph from Sonat.
Anita appeared specially to dismiss for lack of personal and subject matter jurisdiction and for the dissolution of the attachments. On January 15, 1986, the chancellor sustained the defendant's motion and dismissed the action.

JURISDICTION
The plaintiff's bill bases its theory of personal jurisdiction on Mississippi Code Annotated, Section 13-3-57 (Supp. 1986), which states in part:
Any non-resident person ... who shall ... commit a tort in whole or in part in this state against a resident ... shall by such act or acts be deemed to be doing business in Mississippi.
The allegations of the bill, if accepted as true, do describe a "tort committed in whole or in part in this state against a resident." That is the tort of deceit. In Smith v. Temco, Inc., 252 So.2d 212, 216 (Miss. 1971), this Court held that "the tort is not complete until the injury occurs and if the injury occurs in this state, then under the amended statute the tort is committed at least in part in this state... ." See also Thompson v. Chrysler Motor Corp., 755 F.2d 1162, 1167 (5th Cir.1985).
*1026 In short, there is no question that Mississippi has in personam jurisdiction over the defendant in this action, provided such jurisdiction can be reconciled with the due process requirements of the U.S. Constitution. A good discussion of these requirements appears in Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 702-05 (Miss. 1984). Mississippi may not subject a non-resident defendant to a suit in its courts unless that defendant "has certain minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). This standard also applies to quasi in rem actions directed against property held in the forum state against a non-resident defendant. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).
Anita Rudolph contends that she lacks the requisite minimum contacts with Mississippi. She characterizes her contacts with the state as the sort of "random", "fortuitous" and "attenuated" contacts that do not support the forum state's personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 773, 104 S.Ct. 1473, 1477, 79 L.Ed.2d 790, 796 (1984); Tulane Educational Fund, supra, 462 So.2d at 703.
Admittedly, occasional visits to the plaintiff in Mississippi involving such things as the use of the state's highways would probably not constitute sufficient contacts with the state to justify personal jurisdiction. However, as the plaintiff points out, it is undisputed that after presenting the document to Mrs. Anderson, the defendant drove her to Purvis where the document was notarized at the chancery clerk's office by an official of the state of Mississippi. The Supreme Court has held that personal jurisdiction over an out-of-state defendant is proper where that defendant has "purposefully availed himself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958); Tulane, supra, 462 So.2d at 704. In a recent case the Supreme Court stated that "where individuals purposefully derive benefit from their interstate activities... it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities... ." Burger King, supra, 471 U.S. at 473-74, 105 S.Ct. at 2182, 85 L.Ed.2d at 541. The plaintiff contends the defendant's use of Mississippi's legal process for executing documents satisfied the purposeful availment test.
Apparently, no court has confronted the issue of whether the use of a notary public in the forum state constitutes "purposeful availment" for due process purposes. However, if the question is cast in terms of the larger issue of the execution of the document, we do have an instructive case. In Hertz Corp. v. Domerque, 293 So.2d 463 (Miss. 1974), the well-known car rental agency sued a Mississippi citizen who had rented one of its cars in Nevada, damaged it and refused to pay. The action was based on Nevada's long-arm statute, but in deciding whether or not to give full faith and credit to the Nevada judgment, this Court was bound to consider whether or not Nevada's personal jurisdiction over the defendant was permissible under the standards of International Shoe and its progeny. We held that "the execution of the lease contract and the ensuing use of the leased vehicle on the streets and highways of Nevada were not such a single and isolated contact with that state as to prevent jurisdiction of the Nevada court from attaching... ." 293 So.2d at 466. Admittedly, in this case, not only the execution of the contract but the use of the vehicle in Nevada was involved. However, we did not choose to rely on the use of the vehicle alone; the language of the opinion, implies that either the execution of the lease or the use of the car would constitute a sufficient contact.
The due process analysis of personal jurisdiction has one other component, a foreseeability test deriving from World-wide Volkswagen Corp. v. Woodson, 444 U.S. *1027 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). There the Supreme Court stated:
The foreseeability that is relevant to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there.
444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.
Anyone executing a legal document in a certain state should certainly not be surprised that any litigation arising from it should be filed in that state.
We conclude that in the present case, both the statutory and constitutional requirements for in personam jurisdiction were satisfied, insofar as the chancellor's dismissal was based on lack of personal jurisdiction, he erred.
As for subject-matter jurisdiction, it is predicated on MCA § 9-5-81 (1972), which states that the chancery courts shall have jurisdiction over suits to cancel deeds or other documents conveying land. It is sometimes suggested that Mississippi courts lack the power to enter any order affecting title to land in another state. This problem was discussed in Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983), where we said:
It is true that a Mississippi Court cannot try title to Louisiana property. Zorick v. Jones, 193 So.2d 420 (Miss. 1966). Nonetheless, if the suit is not one to try title but is a suit against the person of the defendant, the question is not one of subject matter jurisdiction by virtue of the location of the property, but rather is a question of the choice of law to be applied by the court having jurisdiction over the litigants' persons.
431 So.2d at 458-59.
Similarly, in Spragins v. Louise Plantation, Inc., 391 So.2d 97, 103 (Miss. 1980), we found no jurisdictional obstacle to a decree for specific performance of a contract for the sale of land located in Arkansas, though we held that under Arkansas law the agreement could not be enforced.
The present action is not a suit to try title, but an action against Mrs. Rudolph for the cancellation of an instrument. The fact that the affected land is in Louisiana may make the law of that state controlling under our "center of gravity" test, e.g., Spragins, supra, 391 So.2d at 99; Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968), but it does not, of itself, defeat the jurisdiction of our courts.

STATUTORY CONSIDERATIONS
The appellant contends the complaint and the affidavit in support of the petition for attachment order substantially complied with the requirements of the attachment statute, MCA §§ 11-31-1, et seq. (Supp. 1986). The defendant, on the other hand, argues that in two important respects it has failed to do so. § 11-31-2(1)(a) states in part:
Upon the filing of the bill of complaint, the complainant may apply for an order of attachment by presenting to the chancellor a bill and an affidavit which shall include ... a detailed statement of the facts and grounds which entitled the complainant to an order of attachment, including a statement of the specific reasons why the complainants ability to recover the amount of his claim may be endangered or impeded if the order of attachment is not issued.
The appellee correctly points out that the plaintiff's original affidavit in support of the attachment gave no such reason.
The appellant has two responses to this argument. The first is barely serious; she asserts the chancellor would not have signed the order for attachment if he had not believed the attachment statute had been complied with. But if the statute was not in fact complied with, the chancellor's belief would not have entitled him to assume jurisdiction. Moreover, by dismissing the action, the chancellor presumably served notice that he had changed his mind about the compliance with the statute. It is this dismissal, not the signing of the initial order, which is under review in this appeal.
*1028 The appellant does not attempt to come to grips with the argument more substantively by stating in her affidavit, the "defendant Sonat Exploration Company has now in its possession its royalty forms which, unless prevented by order of attachment, it will continue to periodically deliver to the defendant, Anita Ford Rudolph." But this surely does not serve the statutory purpose. The royalties are from oil and gas interests in Marion County, MS. The land from which the oil and gas is extracted is not going anywhere; nor is it alleged that the reserves of oil and gas are in any danger of depletion. Thus, the affidavit does not establish that the means of satisfying any judgment would be lost if the royalties were not attached.
A second requirement for a valid attachment order is that the affidavit must include "a statement of the amount the plaintiff seeks to recover." MCA § 11-31-2(1)(c). Here the only thing the plaintiff can point to is a passage in the bill stating "certain evaluations have been performed and conducted regarding the property wrongfully taken by defendant Rudolph. Those valuations indicate that the value of the property wrongfully taken is $250,000 to $300,000 in value or more." (emphasis in original) This will not do. A rough estimate of the value in question (give or take about $50,000) simply cannot supply the place of a specific request for damages. Moreover, even if it were satisfactory, the statute says:
Upon the filing of the bill of complaint, the complainant may apply for an order of attachment by presenting to the chancellor the bill, and an affidavit which shall include the following: ... (c) a statement of the amount the plaintiff seeks to recover.
In other words, whether or not the amount of damages requested appears in the bill, it must appear in the affidavit. Yet there is nothing in the affidavit about the value of the land or about the amount the plaintiff is seeking to recover. This court has held that because "attachment and garnishment are proceedings in derogation of the common law, strict compliance with statutory norms and procedures are imperative whenever they are employed." Federal Savings & Loan Ins. Corp. v. S. & W. Constr. Co., 475 So.2d 145, 147 (Miss. 1985). As noted, the affidavit produced by the plaintiff in the present case did not meet the statutory requirements and the chancellor very properly dissolved the attachments.

CONCLUSION
The chancellor's decree must be affirmed as to the dissolution of the attachment. However, since he did in fact have jurisdiction over the matter, he erred in dismissing the action altogether. Thus, the case must be remanded for a trial on the issues.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.