475 So.2d 145 (1985)
FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, as Receiver for North Mississippi Savings & Loan Association, and New North Mississippi Federal Savings & Loan Association
v.
S. & W. CONSTRUCTION COMPANY OF TENNESSEE, INC.
No. 54992.
Supreme Court of Mississippi.
August 21, 1985.
Paul J. Stephens, W.F. Goodman, Jr., P.N. Harkins, III, George R. Fair, Clifford B. Ammons, Jamie G. Houston, III, Watkins & Eager, Jackson, F. Ewin Henson, III, Sullivan, Hunt, Spell & Henson, Clarksdale, for appellant.
Grady F. Tollison, Lauren G. Alexander, Patterson, Tollison, Alexander & Powers, Oxford, for appellee.
Before PATTERSON, DAN M. LEE and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This is an appeal from a decree of the Chancery Court of Lafayette County, Mississippi, denying a motion to set aside a default judgment.
S & W Construction Company of Tennessee, Inc., a Tennessee corporation (S & W) sued Dr. Joseph Villard in a Tennessee court on a debt of $484,110, and on May 12, 1982, obtained a default judgment in that amount. On July 30, 1982, S & W enrolled that judgment in the Lafayette County Chancery Court and petitioned for writ of garnishment and attachment in order to secure any debts owed to Dr. Villard in the hands of North Mississippi Savings & Loan Association and First National Bank of Oxford, Mississippi. First National Bank responded *146 to the writs and denied possession of any property or debts owing to Dr. Villard. The Savings and Loan did not answer and default was entered by the chancery clerk against it on October 7, 1982. That same day, S & W moved in chancery court for a default judgment; at S & W's request, the chancellor telephoned Malcolm Reese, president of North Mississippi Savings and Loan Association, to inform him of the impending judgment.
For the first time, Reese obtained counsel for the Savings and Loan, and that attorney sought a continuance, to which the attorney for S & W would not agree. The Savings and Loan still did not answer and did not appear and default judgment was entered against it for the full amount of the debt, plus costs and attorney's fees.
On October 11, 1982, the Savings and Loan moved to set the default aside, alleging that it occurred due to Dr. Villard's misrepresentations to Mr. Reese. Reese testified that Villard owned 71% of the stock of the Savings and Loan and had accounts therein totaling $350,000, but that these accounts were pledged to the Federal Home Loan Bank of Little Rock, Arkansas. Additionally, Reese stated that he had personal possession of 600 shares of corporate stock in the Savings and Loan that belonged to Dr. Villard. Reese admitted that when he got the initial summons he called Villard and was assured by him that the debt to S & W would soon be paid. Only after the chancellor telephoned Reese did Reese employ counsel for the association.
Attached to the Savings and Loan Association's motion to set aside the default was a sworn answer to the writ of garnishment stating that the only assets of Dr. Villard's held by the Association were certain accounts pledged to the Federal Home Loan Bank.
On April 8, 1983, the chancellor refused to set aside the default judgment and on April 11, 1983, a writ of execution was issued against North Mississippi Savings & Loan Association. That same day, North Mississippi Savings & Loan Association was placed in receivership with the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver. At this time, substantially all assets and liabilities of the Savings and Loan were transferred to a newly organized entity, the New North Mississippi Federal Savings & Loan Association (New Association).
After being advised by FSLIC that under Federal law writs of execution could not be enforced against the new association, S & W on April 16, 1983, petitioned the Chancery Court for a writ of assistance so that the prior judgment could be executed upon. On April 28, 1983, FSLIC and the New Association filed a sworn declaration to the same effect as that filed by the old association on October 11, 1982. This declaration was followed by an alternative motion to rescind and strike the default judgment. The chancellor also denied these motions.

I.

BASED UPON MISSISSIPPI CODE ANNOTATED § 11-35-31 (SUPP. 1984), DID THE CHANCELLOR ERR AS A MATTER OF LAW IN REFUSING TO GRANT NORTH MISSISSIPPI SAVINGS & LOAN ASSOCIATION'S SWORN MOTION TO VACATE DEFAULT JUDGMENT AND THE APPELLANT'S DECLARATION?
§ 11-35-31 reads in its entirety as follows:
If a garnishee, personally summoned, shall fail to answer as required by law, or if a scire facias on a judgment nisi be executed on him, and he fail to show cause for vacating it, the court shall enter a judgment against him for the amount of plaintiff's demand; and execution shall issue thereon, provided, however, that the garnishee may suspend the execution by filing a sworn declaration in said court showing the property and effects in his possession belonging to the debtor, and his indebtedness to the debtor, if any, or showing that there be none, if that be true; and by such act and upon a hearing thereon, the garnishee shall limit his liability to the extent of such *147 property and effects in his hands, and such indebtedness due by him to the debtor, plus court costs and reasonable attorney's fees of the judgment creditor in said garnishment action.
Appellants argue that under this statute and our decision in Mississippi Action for Community Education (MACE) v. Montgomery, 404 So.2d 320 (Miss. 1981), appellants clearly had a right to file a sworn answer even after the entry of default, describing the property in its possession before the execution had been completed and thereby limit its liability to the extent of such property, effects and indebtedness due by it to the debtor. This right could only be extinguished when execution has been completed. Execution has not been completed in this case. The chancellor rejected this argument.
In response, counsel for S & W argued that the judgment could only be set aside under the provisions of Rule 60 of the Mississippi Rules of Civil Procedure. This contention was laid to rest in First Mississippi National Bank v. KLH Industries, Inc., 457 So.2d 1333 (Miss. 1984). Since KLH Industries, supra, it cannot be questioned that the procedural rules whereby a party seeks to enforce, or resist the enforcement of, the remedy of garnishment are those provided by our garnishment statutes, Mississippi Code Annotated §§ 11-35-1  61 (1972), supplemented only by so much of the Mississippi Rules of Civil Procedure as may be found not inconsistent with those statutes. The chancellor, therefore, should have vacated the default judgment, allowed the answer to be filed and then held a hearing to determine the extent of property and effects, if any, in the appellant's possession.
This assignment of error has merit, and because that is so the case must be reversed and remanded to the Chancery Court of Lafayette County.

II.
The result we have reached above renders discussion of the remaining assignments of error by the appellant unnecessary.
It is necessary, however, that we discuss the argument of S & W contained in their supplemental brief. When KLH Industries, supra, was handed down, after this case had already been briefed, S & W in their supplemental brief attempted to save their judgment by the imaginative argument that since the writs of attachment in chancery court were never formally dissolved, somehow they furnish an independent basis for the chancellor's rendering of the default judgment.
Two flaws in this argument are immediately apparent. In the first place, the default judgment entered by the chancery court makes no mention of the attachment. In the second place, this argument seems to rest upon a misconception of the nature of the remedy of attachment. S & W recognizes that KLH Industries, supra, clearly holds that attachment is a "provisional" remedy, 457 So.2d at 1336-37, but fails to recognize the implications of this holding.
We have found no case in which a petition for writ of attachment alone successfully supported a default judgment. This is not surprising, since attachment by definition is a pre-judgment remedy. One authority defines attachment as an involuntary dispossession of the defendant prior to any adjudication of the rights of the plaintiff. (Emphasis added). 7 C.J.S. Attachment § 2A. Attachment is also considered a "mere provisional remedy, ancillary to an action." 7 C.J.S. Attachment § 3B. We would think it apparent that such a provisional remedy as attachment cannot independently furnish a basis for default judgment.
We have held that since attachment and garnishment are proceedings in derogation of the common law, strict compliance with statutory norms and procedures is imperative whenever they are employed. St. Paul Fire & Marine Insurance Co. v. Arnold, 254 So.2d 872, 873 (Miss. 1971). This is true regardless of whether the attachment is at law or in chancery.
Our attachment in chancery statute delineates two classes of defendants. The *148 primary defendant can be "any nonresident, absent or absconding debtor, who has lands or tenements within the state". Other potential defendants include "persons in the state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor." The statute authorizes an in personam decree only against a defendant of the former type, and then only "if summons has been personally served against him, or if he has entered an appearance." Miss. Code Ann. § 11-31-1 (1972).
Our case law indicates our unwillingness to allow the attachment remedy to be expanded beyond its statutory confines. Our decisions consistently stress the fact that attachment is basically a proceeding in rem. Mid-South Paving Co. v. Trinidad Asphalt Manufacturing Co., 197 Miss. 751, 775, 21 So.2d 646, 649 (1945). Where the nonresident defendant has neither appeared nor been personally served, the action can proceed only on an in rem basis. Martin v. Adams Mercantile Co., 203 Miss. 177, 181, 33 So.2d 633, 635 (1948).
In view of the narrow construction placed on the statute, we are not persuaded that it authorizes the use of the writ of attachment in chancery as an independent basis for a default judgment under these facts. We are not unmindful of the fact that a contrary holding would enable creditors to defeat the purpose of the garnishment statute by the simple expedient of attaching property at the beginning of a garnishment action. Surely the legislature could not have intended such a result.
Therefore, and to whatever extent the chancellor might have intended to allow the writ of attachment to independently furnish a basis for the default judgment which he granted, he was in error.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.