70  521
74  494
70  521
f78  134
70  521
o85  238
70  521
86  787

J. F. CAZENEUVE ET AL. *v.* N. CURELL.

1. CHANCERY JURISDICTION.   *Const.* 1890, § 161.   *Action of trespass.*

   Section 161, constitution 1890, giving the chancery court jurisdiction concurrent with the circuit court "of suits on bonds of public officers for failure to account for money or property received, or wasted or lost by neglect," does not confer on such court jurisdiction of a suit on the bond of a sheriff who has made an excessive levy of attachment on personal property, a part of which is destroyed while in his custody. Although discovery is asked as to the articles destroyed, this is simply an action of damages for trespass, cognizable only at law.

2. SAME.   *Const.* 1890, § 147.   *Supreme court.   Inability to reverse.*

   But, under § 147 of the constitution, which forbids the reversal of any judgment or decree on the ground of a want of jurisdiction arising from error as to whether the cause is of equity or common law jurisdiction, if the chancery court, though erroneously, assumes jurisdiction of such action of trespass, the supreme court is powerless to interfere.

3. SAME.   *Const.* 1890, § 147.   *Not confined to final decrees.*

   This restriction upon the power of the supreme court to reverse is not confined to final judgments or decrees, but applies also to appeals from interlocutory orders or decrees where the question of jurisdiction is directly raised.

FROM the chancery court of Hancock county.

HON. W. T. HOUSTON, Chancellor.

The appellee filed her bill in the chancery court of Hancock county against J. F. Cazeneuve, sheriff of said county, and the sureties on his official bond, alleging that the sheriff, under a writ of attachment against J. T. Villars for $290.87, levied on certain personal property of complainant of the value of $1,825, taking the same into his possession; that the levy was wanton, oppressive, and excessive; that the property was, by the sheriff, for safe-keeping, placed in a house which was burned, and the property so levied on, to. the value of $500, was destroyed, and the remaining property

damaged to the extent of $500.   The bill further alleged that complainant interposed a claim for said property in the attachment suit, which claim was adjudged against her, and that the property saved was sold by the sheriff, the proceeds being more than sufficient to satisfy the judgment and costs; that the sheriff has not paid or accounted to complainant for the property so destroyed and damaged; but had refused so to do; that complainant did not know the exact amount of property destroyed, or the extent of the damage.   The prayer was for the discovery as to the nature and amount of property destroyed and injured, and for an accounting as to the loss, and a decree against the officer and his sureties for the sum found to be due.

Defendants demurred, on the ground that the bill showed no equity, and because complainant's remedy was at law. From a decree overruling the demurrer, defendants appeal.

*E. J. Bowers,* for appellants.

The real complaint is that the levy was wanton and excessive.   The fact that the goods were destroyed by fire is immaterial.   If the levy was not excessive, the officer is not liable.   The bill does not aver any negligence in the manner of keeping the goods.   *Barnett* v. *Dalton,* 69 Miss., 611.   The action is therefore only for the tort, and is not cognizable in the chancery court.   The fact that a discovery is prayed does not give jurisdiction.   2 Daniel's Ch. Pl. & Pr., 1557.

Section 161, constitution 1890, does not confer jurisdiction. That section only applies in cases where fiduciaries and officers have lost, wasted, or misapplied property or funds *lawfully* in their hands.   It does not extend to actions *ex delicto.* This is a suit for the tortious act of the sheriff in taking property.   The court has no jurisdiction.

*W. A. White* and *A. M. Dahlgren,* for appellee.

It was not necessary to charge the sheriff with negligence in failing to take care of the goods, as the seizure of the ex-

cess was unlawful. 7 Lawson's Rights, Rem. & Pr., § 3827; Freeman on Ex., § 253; *Smokey* v. *Peters*, 66 Miss., 471.

This is not an action for the trespass in taking the property, but is a suit to compel an accounting. The chancery court has jurisdiction concurrent with the circuit court of suits on bonds of public officers for failure to account for money or property received and wasted. Constitution 1890, § 161. That complainant could have sued at law for damages does not affect her right to sue in the chancery court for the value of the property. The sheriff took the property under the color of his office, and equity has jurisdiction in a suit on the bond to compel him to account for it.

WOODS, J., delivered the opinion of the court.

The record shows that this suit is really an action of trespass brought in a court of equity. The recovery is sought for an oppressive and excessive levy made by a sheriff of a writ of attachment, and is purely an action for damages for a trespass.

Section 161 of the constitution does not confer jurisdiction in cases of this character upon chancery courts. That section confers jurisdiction on chancery courts, concurrent with the circuit courts, "of suits on bonds of fiduciaries and public officers for failure to account for money or property received, or wasted or lost by neglect or failure to collect," etc. This is not a suit for the failure of a public officer to account for money or property received for appellee's benefit, or on her behalf; nor is it a suit for money or property wasted or lost by neglect or failure of the officer to collect under process in favor of appellee. It is a suit for the recovery of damages for an oppressive and grossly excessive levy, and § 161 has no application, and the court below was without jurisdiction, in our opinion.

But the court assumed jurisdiction, and, as this is the only error assigned, or apparent, we cannot reverse the decree overruling appellant's demurrer to the bill of complaint.

Section 147 of the constitution declares "that no judgment or decree in any chancery or circuit court, rendered in any civil cause, shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction; but, if the supreme court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the supreme court may remand it to that court which, in its opinion, can best determine the controversy." We find here practical authority for the virtual obliteration of the lines of demarkation between courts of law and equity, if the judges and chancellors of the inferior courts choose to disregard, or fail to observe, those distinguishing lines. And this court is forbidden to reverse or annul decrees or judgments rendered in the lower courts, even if there was want of jurisdiction, if no other error than want of jurisdiction is to be found. That diverse and conflicting rules of practice and procedure may obtain in the several court districts is plain. The chancery court of one district may assume jurisdiction of common law causes, and the equity courts of the adjoining districts may refuse to entertain such jurisdiction. In the same district variant and uncertain rules and methods may obtain. The diversities of practice may be found in the same district under different chancellors or circuit judges from time to time presiding therein. It is practically within the power of the chancellors and circuit judges, under this provision of the constitution, to virtually abrogate the distinction between courts of common law and equity jurisdiction. We have the singular anomaly of a constitutional scheme of two courts, common law and equity, and yet with power in the inferior judges to effectually blend the jurisdictions, each in his own district. But, remarkable as the results flowing from this anomaly are, we are not to disregard the plain requirements of the fundamental law. The court below, in the case at bar, clearly had no jurisdiction, and should have sustained

the demurrer to the bill, and so have driven complainant to his common law remedy. But the learned chancellor having entertained jurisdiction, and this being the only error committed, we are forbidden to reverse.

It may be thought by some that the supreme court is forbidden to reverse only *final* judgments or decrees, where error from want of jurisdiction appears. But the all-sufficient answer to this suggestion is, that the framers of the constitution, with a clear apprehension of the distinction between final and interlocutory decrees and judgments, declare that *no* decree shall be reversed because of want of jurisdiction in the lower court. There is nothing to even suggest that only decrees or judgments determining and settling the merits, were included in this constitutional provision. We are not to arbitrarily interpolate qualifying words or expressions to limit a constitutional inhibition. The language is plain, unambiguous, all-comprehensive. The purpose of this section of the constitution is to prevent reversals because of want of jurisdiction in the court below. In other words, a decree or judgment, in all other respects correct, shall not be reversed simply because the right decree or judgment has been rendered or pronounced in the wrong court. If the final decree or judgment cannot, in such case, be annulled or reversed by us, if the laborious result of protracted litigation, in its completed finality, cannot be reviewed by us, what reason can be assigned for holding that an interlocutory order—a single step in the progress of the completed litigation—may be reversed or annulled by this court? Rather, must it not be held that, if the final decree or judgment, the perfected product of the litigation, is irreversible here when the only error is want of jurisdiction in the court below, each step in the course of the litigation, resulting in that perfected product, must be held irreversible also?

That the inhibition laid on this court in this section of the constitution, is not confined to action on final decrees or judgments, is manifest from a consideration of the startling

incongruity of the civil administration which would result from adopting the construction contended for by those who would restrict the inhibition to final decrees or judgments. We shall, in that case, have the intolerable anomaly of appeals maintainable from decrees or demurrers in courts of equity, in cases where the lower court was without jurisdiction, and, in like cases, no appeals allowed from judgments of circuit courts. Surely no one can be found to insist that this absurd inconsistency of civil administration was any part of the constitutional scheme for mitigating what must have been supposed to be the evils of too rigidly observing the bounds of jurisdiction between the courts of law and equity.

We are bound to uphold and observe and enforce the organic law as we find it plainly written; and, if inconvenience, incongruity and seeming absurdity shall mark the administration of civil law, we must not concern ourselves unnecessarily thereat.

The only error assignable is the want of jurisdiction in the court below to render the decree, and, as the learned chancellor entertained jurisdiction, under § 147 of the constitution forbidding a reversal in this court because of such error,

*The decree overruling the demurrer is affirmed, and the appellants given leave to answer within thirty days after mandate filed in the court below.*