551 So.2d 212 (1989)
Randolph C. (Dolph) TILLOTSON, Natchez Newspaper, Inc. and Susan Willey
v.
J. Odell ANDERS.
No. 89-IA-00013.
Supreme Court of Mississippi.
August 16, 1989.
Rehearing Denied November 8, 1989.
R. Kent Hudson, Gwin, Lewis, Punches & Hudson, Natchez, for appellant.
John E. Mulhearn, Jr., Mulhearn & Mulhearn, Natchez, for appellees.
En banc.
ROBERTSON, Justice, for the Court:

I.
This is a libel action wherein a former chancery clerk has sued his hometown newspaper and two of its reporters, complaining of articles and editorials about his conduct of his office and demanding actual and punitive damages. The former clerk attempted to disguise his action as one for an accounting and then filed it in the chancery court. The newspaper moved to dismiss for lack of subject matter jurisdiction. When the Court below denied the motion, we accepted the newspaper's interlocutory appeal. We reverse.

II.
The parties to this appeal are as follows:
J. Odell Anders is an adult resident citizen of Adams County, Mississippi. He served as Chancery Clerk of Adams County from November of 1974 until January of 1988. Anders was the plaintiff below and is the appellee here.
Natchez Newspapers, Inc., is a Mississippi corporation and is the publisher of a daily newspaper known as The Natchez Democrat, which at all times relevant has had a general circulation in Adams County, Mississippi, and in surrounding areas.
Randolph C. (Dolph) Tillotson and Susan Willey were at all relevant times employees of Natchez Newspapers, Inc., serving as reporters for The Natchez Democrat. *213 Natchez Newspapers, Inc., Tillotson and Willey were the defendants below and are the appellants here. They are hereafter collectively referred to as "the Newspaper".
Between May 30, 1987, and June 21, 1987, the Newspaper published a series of articles and editorials regarding Anders' conduct of the office of Chancery Clerk. These articles and editorials were critical of Anders for the substantial income his family derived from his service in office, commenting upon the fact that Anders had hired his wife and his two daughters as deputy clerks and had paid them allegedly handsome salaries. The Newspaper was generally critical of the system provided by state law for compensating chancery clerks and their deputies.
On October 19, 1987, Anders commenced this civil action by filing his complaint in the Chancery Court of Adams County, Mississippi. Anders charged that the articles were false, and maliciously so, and then charged that the proof in this case would be "extremely complex and complicated and present issues of accounting that could only be resolved by the Chancery Court because of the complex nature thereof." Anders demanded a declaratory judgment that all receipts and disbursements of funds discussed in the articles were in strict conformity with law and then demanded of the Newspaper actual damages in the amount of $500,000.00 and punitive damages in the amount of $8,000,000.00, plus attorneys fees and court costs.
On November 2, 1987, the Newspaper filed a motion to dismiss or, in the alternative, to transfer the case to the Circuit Court of Adams County. The Newspaper charged that Anders' suit was a garden variety libel action which lay outside Chancery Court subject matter jurisdiction. The Newspaper also invoked its right to trial by jury, Miss. Const. Art. 3, § 31 (1890), and argued that this right would be denied if the matter remained in the Chancery Court.
On June 28, 1988, the Chancery Court denied the motion, holding that the action lay within chancery court subject matter jurisdiction because it is one "which requires a complex accounting and several issues upon which a multiplicity of suits could arise." On July 25, 1988, the Court entered its order denying the motion to dismiss or transfer.
Having found that there are substantial grounds for believing that the Chancery Court erred on the legal question of subject matter jurisdiction and that an interlocutory appeal might materially advance the termination of the litigation and protect the Newspaper from substantial and irreparable loss of its right to trial by jury, we granted the Newspaper's interlocutory appeal. See Rule 5(a), Miss.Sup.Ct. Rules.; American Electric v. Singarayar, 530 So.2d 1319, 1321-24 (Miss. 1988).

III.
That this is a libel suit ordinarily cognizable as an action at law does not inexorably preclude its being heard in chancery court. Where there appears from the face of the well-pleaded complaint an independent basis for equity jurisdiction, our chancery courts may hear and adjudge law claims. Penrod Drilling Co. v. Bounds, 433 So.2d 916 (Miss. 1983); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983); Burnett v. Bass, 152 Miss. 517, 521, 120 So. 456 (1929). In such circumstances we consider that the legal claims lie within the pendent jurisdiction of the chancery court.
Anders proclaims independent equity grounds threefold. Foremost, he insists that this is an action for an accounting, noting that our chancery courts have historically enjoyed jurisdiction over suits for accounting. See Dunagin v. First National Bank, 118 Miss. 809, 80 So. 276 (1919); Evans v. Hoye, 101 Miss. 244, 252-53, 57 So. 805, 806 (1912); see also Miss. Const. Art. 6, § 159(f) (1890) (jurisdiction over all cases of which the chancery court had jurisdiction under the laws in force when the Constitution was adopted and put into operation); Miss. Code Ann. § 9-5-81 (1972); Griffith, Mississippi Chancery Practice, § 24 (2d ed. 1950); Pomeroy, Equity Jurisprudence, §§ 1420 & 1421 (5th ed. 1941).
*214 One fallacy in Anders' point is that his complaint does not seek an accounting as between himself and the Newspaper. When the question whether an action lay within chancery court subject matter jurisdiction has been raised, our cases have consistently held
It is the substance of the action that should be controlling on this issue, not its form or label.
Thompson v. First Mississippi National Bank, 427 So.2d 973, 976 (Miss. 1983). In Dixie National Life Insurance Co. v. Allison, 372 So.2d 1081 (Miss. 1979), we rejected a plaintiff's characterization of his action as one for specific performance, noting that
it was nothing more than a suit for breach of contract and should have been brought in the circuit court.
Dixie National, 372 So.2d at 1085. We repeated the point in Thompson and urged that our lower courts
be wary of attempts to camouflage as a complicated accounting what is in essence an action at law for breach of contract.
Thompson, 427 So.2d at 976. More recently, in Blackledge v. Scott, 530 So.2d 1363 (Miss. 1988), we rebuffed a plaintiff's effort to bring in chancery court what was clearly a common law tort action.
Love v. Dampeer, 159 Miss. 430, 439, 132 So. 439, 442 (1931) affords Anders no succor, for that case involved liquidation of a bank, a matter within chancery court jurisdiction by statute. Miss. Code Ann. § 3817 (1930). The same may be said of Anders' citation of State of Mississippi ex rel. King v. Harvey, 214 So.2d 817 (Miss. 1968), a suit on the bond of a public official. See Miss. Const. Art. 6, § 161 (1890).
Anders next argues that this is a suit to prevent a multiplicity of suits at law, and, indeed, the court below so held. To be sure, this is another of the historical grounds for equity jurisdiction. Griffith, Mississippi Chancery Practice §§ 24, 439 (2d Ed. 1950). How the notion applies here escapes us. True, Anders complains of a series of articles and editorials. Perhaps theoretically each could be made the subject of a separate action, but they have not been and we have no doubt of the propriety of their being joined in a single action at law before the circuit court. Conceivably, the state auditor or some public authority might proceed against Anders, but that would involve, at least in part, different legal theories than today's action. There is a marked difference between a multiplicity of suits and a multitude of suits. See Gulf & Ship Island Railroad Co. v. Barnes, 94 Miss. 484, 512, 48 So. 823, 829 (1909).
Finally, Anders suggests, if we understand him correctly, that his prayer for declaratory judgment makes his suit cognizable in chancery. The short answer is that our law's authorization of the declaratory judgment procedure in Rule 57, Miss. R.Civ.P., is jurisdictionally neutral. Rule 57 empowers the trial court to grant a procedural remedy not thought available in our practice prior to January 1, 1982. That new remedy may be sought only in a court of otherwise competent jurisdiction. Indeed, nothing in the Mississippi Rules of Civil Procedure may be construed to extend or limit the subject matter jurisdiction of our trial courts.[1] Rule 82(a), Miss.R.Civ.P.
There is good reason why we ought heed the Newspaper's arguments, and do so interlocutorily. The Newspaper has demanded its right to trial by jury. If this action is allowed to remain in chancery court, there will be no trial by jury, this notwithstanding the command of our constitution that "the right of trial by jury shall remain inviolate."[2] Miss. Const. Art. 3, § 31 *215 (1890). See Penrod Drilling Co. v. Bounds, 433 So.2d 916, 931-32 (Miss. 1983) (Robertson, J., concurring); Louisville & Nashville Railroad Co. v. Hasty, 360 So.2d 925 (Miss. 1978), McLean v. Green, 352 So.2d 1312 (Miss. 1977). And, if the case should proceed to final judgment in chancery and there appear in the record no error other than the point of subject matter jurisdiction, we would be without power to reverse. Miss. Const. Art. 6, § 147 (1890); Talbot and Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927).
We hold that this case lies outside the limited subject matter jurisdiction of the chancery court. If that be so, it must perforce be within the subject matter jurisdiction of the circuit court, a court of general jurisdiction. See Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985). Miss. Const. Art. 6, § 156 (1890) provides:
The circuit court shall have original jurisdiction in all matters, civil and criminal, in this state not vested by this constitution in some other court.
See also Miss. Code Ann. § 9-7-81 (1972). Indeed, our circuit courts have long had subject matter jurisdiction over actions for libel or other forms of defamation. See Francis v. Flinn, 118 U.S. 385, 6 S.Ct. 1148, 30 L.Ed. 165 (1886); Harrison v. Triplex Gold Mines, 33 F.2d 667, 672 (1st Cir.1929); see generally, Evans v. Progressive Casualty Co., 300 So.2d 149, 151 (Miss. 1974).

IV.
Miss. Const. Art. 6, § 147 (1890) does not compel a contrary result. Section 147, precluding reversal of a "judgment or decree" of a chancery or circuit court, applies primarily (although not necessarily exclusively) to final judgments or decrees. Today's parties have not yet endured the slings and arrows of litigation and thus Appellee Anders possesses nothing like the equities of one who has, and who has obtained a final judgment in his favor. Moreover, this construction of Section 147 is necessary that full effect may also be given the Newspaper's right to trial by jury, Miss. Const. Art. 3, § 31 (1890), not to mention its right secured by Miss. Code Ann. Art. 6, § 162 (1890) that this case "shall be transferred to the circuit court."
Laws are condemned to the form of words and phrases authored by persons inherently unable to escape their relative ignorance of fact nor to correct their relative indeterminacy of aim. The law giver's quiver is found filled with arrows bent by attitude and indeterminacy. His words and phrases are but imperfect expressions of dynamic thoughts. Realizing this, we long ago shed our innocence and accepted that people's rights and the laws that create them often conflict. Where this is so courts proceed in a way that give maximum effect to each. Mississippi Insurance Guaranty Association v. Vaughn, 529 So.2d 540, 542 (Miss. 1988); Dye v. State ex rel. Hale, 507 So.2d 332, 342 (Miss. 1987); Surles v. State ex rel. McNeel, 357 So.2d 319, 320-21 (Miss. 1978); State ex rel. Collins v. Jackson, 119 Miss. 727, 739, 741-42, 81 So. 1, 5-6 (1919). The view that Section 147 precludes reversal would effectively eviscerate Sections 31 and 162 of our Constitution, yet our oaths require fidelity to the latter two sections as great as to the former. Reading Section 147 to apply only to final judgments, or cases where, by litigation, a party has gained some other substantial advantage, gives maximum life to Sections 31 and 162 in cases of conflict.
Because the point has been questioned, not by Anders[3] but by several Justices of this Court in dissent, discussion is in order. Section 147 declares:
No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error *216 or mistake as to whether the cause in which it was rendered was in equity or common-law jurisdiction; .. .
.....
The political history of Section 147 supports the view we take.
We begin with Cazeneuve v. Curell, 70 Miss. 521, 13 So. 32 (1893), which concerned an interlocutory appeal from a chancery court order overruling a defendant's demurrer to the court's jurisdiction. Cazeneuve was an action in trespass erroneously brought in chancery court. The defendants demurred, claiming lack of equitable jurisdiction. The demurrer was overruled. On appeal, the only error assigned was the chancery court's assumption of subject matter jurisdiction. This Court affirmed under the authority of Section 147, stating that the section represented "practical authority for the virtual obliteration of the lines of demarcation between courts of law and equity, if the judges and chancellors of the inferior courts choose to disregard, or fail to observe, those distinguishing lines." 70 Miss. at 524, 13 So. at 32-33. The Court also found the restriction of Section 147 to extend to interlocutory orders, relying primarily upon the anomalous situation which would result from the fact that only courts of chancery allowed an appeal from such an order.
That the inhibition laid on this court in this section of the constitution, is not confined to action on final decrees or judgments, is manifest from a consideration of the startling incongruity of the civil administration which would result from adopting the construction contended for by those who would restrict the inhibition to final decrees or judgments. We shall, in that case, have the intolerable anomaly of appeals maintainable from decrees or demurrers in courts of equity, in cases where the lower court was without jurisdiction, and, in like cases, no appeals allowed from judgments of circuit courts. Surely no one can be found to insist that this absurd inconsistency[4] of civil administration was any part of the constitutional scheme for mitigating what must have been supposed to be the evils of too rigidly observing the bounds of jurisdiction between the courts of law and equity.
70 Miss. at 525-26, 13 So. at 33.
We have come a long way since Cazeneuve. Indeed, Cazeneuve's ink was hardly dry on the pages before this Court recognized that not all interlocutory orders were within Section 147's bar. In Whitney v. Hanover National Bank, 71 Miss. 1009, 15 So. 33 (1894), the Court held that the appointment of a receiver for an insolvent bank by a chancery court could be collaterally attacked on jurisdictional grounds, as Section 147 "does not apply, but relates to a civil cause, as properly understood, and not to all that a chancellor or judge may do." 71 Miss. at 1022, 15 So. at 37 [Emphasis Supplied].
The idea that the bar of Section 147 should be limited to final judgments or decrees soon emerged. In Hawkins v. Scottish Union & National Insurance Co., 110 Miss. 23, 69 So. 710 (1915), the Court noted
[W]e think one of the designs of the statute, with which section 147 of the Constitution is in keeping, is to protect parties who have mistaken the forum in which their causes should be tried, who simply entered the temple of justice by the door on the left, when they should have entered by the door on the right... . [I]t would be a narrow construction of that statute to say that because, if plaintiff had, by mistake, attempted to assert his right in a court having no jurisdiction, he is not entitled to the benefit of it.
110 Miss. at 29, 69 So. at 712.
This same sentiment was echoed by Justice Ethridge in his dissent in Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927):

*217 The principle sought to be accomplished by section 147 of the Constitution was to prevent the necessity of determining the jurisdiction at the end of a trial, where a case had been properly tried and the proper result reached, saving alone that it was reached in the wrong court, and, if it was in the wrong court, to upset a just result.
147 Miss. at 193-94, 113 So. at 435. [Emphasis supplied]
There exists an inherent tension between Section 147 and those sections of the Constitution addressing the transfer of causes from chancery to circuit court, and vice versa. Miss. Const. Art. 6, §§ 157, 162 (1890). The applicable transfer sections are:

Section 157. All causes that may be brought in the circuit court whereof the chancery court has exclusive jurisdiction shall be transferred to the chancery court.
and

Section 162. All causes that may be brought in the chancery court whereof the circuit court has exclusive jurisdiction shall be transferred to the circuit court.
Both of these sections of the Constitution have been construed by this Court to be commands of the positive law. In Murphy v. City of Meridian, 103 Miss. 110, 60 So. 48 (1912), the plaintiff incorrectly brought suit in the chancery court, which dismissed the complaint for lack of jurisdiction. On appeal, the Court held Section 162 to require transfer to circuit court. The Court also held that the appeal, the Court's reversal of the chancery court and its order to transfer the cause to the circuit court were all outside the operation of Section 147, because the case had not proceeded to final judgment.
If the chancery court had assumed jurisdiction of this cause, and decreed or denied relief, then that section of the Constitution would come into play and would be controlling with this court.
103 Miss. at 116, 60 So. at 49. [Emphasis supplied]
In Robertson v. F. Goodman Dry Goods Co., 115 Miss. 210, 76 So. 149 (1917), the Court addressed the issue whether the order of a chancery court transferring an action to circuit court was appealable. Robertson, a revenue agent, had filed a bill in chancery to collect past due taxes, an action properly within the jurisdiction of the circuit court. The chancery court declined jurisdiction, transferring the action to the circuit court. Robertson appealed the order. The defendant/appellee attempted to prevent review of the order, invoking Section 147 and citing Cazeneuve. The Court noted that the threshold question regarding Robertson's right to appeal the transfer order presented the "more troubling question".
While we conceive it to be the duty of the circuit court to proceed without question with a cause transferred to it by proper decree of the chancery court, it yet remains that the chancellor might in some instances be in error in transferring a cause that manifestly presents grounds for equitable relief, and that could not be tried in a common-law court, according to right and justice... . A case .. . might be presented where the complainant would be compelled to have a reformation of a written instrument, a discovery, an accounting, or some other remedy in chancery before his rights could be ascertained and justice executed. In such cases the very right of the complainant would depend upon his remedy, and among other rights of litigants they sometimes have the right to equitable remedies, without which their very rights could not be enforced or wrongs done them redressed... . If we should decline jurisdiction in the present case, we would be setting a precedent whereby jurisdiction would be declined in all cases of this character.
115 Miss. at 223-24, 76 So. at 151.
The rationale employed in Robertson was again used by the Court in Reed v. Charping, 201 Miss. 477, 29 So.2d 271 (1947). To the same effect is Fortenberry v. Wilkerson, 222 Miss. 70, 75 So.2d 274 (1954), where, in reversing a chancery court's transfer order, the Court noted that the *218 case had "never been tried in the court to which it was transferred. The effect of said Section 147 has usually arisen where the case has been tried by such a court. That would present a different question from that confronting us in this case." 222 Miss. at 74, 75 So.2d at 276.
Robertson v. Evans, 400 So.2d 1214 (Miss. 1981) is our latest case in this line. Robertson was a tort action arising from an intersectional collision between a motorcycle and an automobile. The injured minor sued in chancery court demanding monetary damages. The chancery court denied defendant's transfer motion and an interlocutory appeal was sought. This Court found "a clear abuse of discretion" and ordered the case transferred "to the proper circuit court."[5]
In sum, this Court's treatment of transfer orders under Sections 157 and 162 of the Constitution is consonant with the reading of Section 147 which restricts the authority of this Court to reverse only in cases where a full hearing on the merits had already been held, albeit in the incorrect forum, or where by litigation a party has gained some other substantial advantage.[6] The rationale employed to extend the inhibitory nature of the section to interlocutory appeals (the existence of that mechanism only in chancery) has since been obviated by the adoption of various procedural rules which allow interlocutory appeals from both circuit and chancery.[7] The common sense policy reason for there being a Section 147 at all is to protect a person who has tried his case and won it from having his time and expense and trouble and result go down the drain because of a jurisdictional error.[8] The same notion undergirds the Double Jeopardy Clause.
Persons in this posture are deserving of protection from relitigation; hence, Section 147. The opposite result is compelled where, as here, the jurisdictional point is raised at an early pre-trial stage  a mere fourteen days after Anders filed suit  and appealed interlocutorily.

V.
We hold that the Chancery Court substantially abused its discretion when it failed to grant the Newspaper's motion to dismiss or, in the alternative, to transfer to Circuit Court. Rather than here ordering the case dismissed,[9] we reverse and remand *219 the case to the active docket of the Circuit Court of Adams County, Mississippi.
INTERLOCUTORY APPEAL GRANTED; ORDER OF CHANCERY COURT DENYING MOTION TO DISMISS OR TO TRANSFER TO CIRCUIT COURT REVERSED; CASE REMANDED TO CIRCUIT COURT OF ADAMS COUNTY, MISSISSIPPI.
ROY NOBLE LEE, C.J., and PRATHER, ANDERSON and BLASS, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion, joined by DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
It is not simply a matter of disagreement on a principle of law. The majority disregards a plain commandment of the Mississippi Constitution.
Article 6, Section 147 of our Constitution provides that no judgment or decree in a civil case shall be reversed or annulled on the ground of want of jurisdiction or because it was the wrong court.[1]
In a host of decisions we have held precisely what the Constitution stated. We cannot find error simply because a circuit or chancery court took jurisdiction over some cause of action which properly belongs in the other.[2]
But, mirabile dictu, the majority now tells us that even though we would be powerless to reverse a final judgment on direct appeal for such an error, we can grant the extraordinary relief of permitting an interlocutory appeal (and even where the chancellor has refused to grant it) in order that we may do on an interlocutory appeal that which we are forbidden by § 147 to do on direct appeal from a final decree. We grant an interlocutory appeal and reverse an order of the chancery court overruling a motion to transfer the cause to circuit court and retaining jurisdiction.
To disregard a command of the Constitution through ignorance is dangerous; to disregard it because we do not like it, and think we can improve upon it is arrogance mixed with dangerous.
I do not wish to linger here on the question of whether or not the action filed by the plaintiffs had sufficient equitable features to merit the chancellor's retaining jurisdiction. The chancellor thought it did *220 under the allegations of the complaint, which was all he was required to consider. Johnson and Knight v. Hinds County, 524 So.2d 947 (Miss. 1988); American Fidelity Fire Ins. Co. v. Athens Stove Works, Inc., et al., 481 So.2d 292 (Miss. 1985). Moreover, the chancellor gave a perfectly valid reason for doing so. And, if this Court remains faithful to its holding in Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464-465 (Miss. 1983), which I will discuss, the chancery court clearly had an additional jurisdictional ground because the complaint alleged conduct justifying punitive damages.
I will return to this later.
It is the majority's emancipation proclamation of § 147 which is profoundly disturbing.
This needs answering right off.
As above noted, § 147 of our Constitution states about as plainly as it can be stated that this Court cannot reverse or annul any judgment or decree rendered in a circuit or chancery court because the wrong court entertained jurisdiction. So long as one court or the other would have had jurisdiction, we are powerless to reverse because the wrong court took the case. I have listed about 27 decisions holding this, precisely.
If we lack the Constitutional authority to disturb a final judgment or decree rendered in the wrong court, it ought to be clear on its face that we are prohibited from interfering with a pending case in a trial court, grant an interlocutory appeal, and switch courts on our own. If we lack the constitutional power to interfere with a final decree or judgment for this reason, we certainly lack the constitutional authority to interfere with a case in progress.
Yet according to our majority, we recognize that a litigant may complain from the first day to the trial judge that the case ought to be in another court, but if the judge refuses to transfer, and a final judgment is rendered, we have no Constitutional authority whatever to reverse or interfere with the judgment in any manner for this reason on appeal.
No, we cannot do this, but if the complaining party mails us a motion for an interlocutory appeal, we have the authority to take a pending case  even in the middle of a trial  away from the trial court and enter an order switching courts.
What magnificent judicial economy.
Can anybody believe the authors intended for § 147 be so easily and simply circumvented? If they did they might as well not placed § 147 in the Constitution in the first place. Could the authors of § 147 have been this silly?
Now, the majority may not like § 147 of our Constitution. That is too bad, it ought to recommend its repeal or change, not cancel it by a decision from this Court.
And, of course, this Court has actually held time and time again that our lack of authority to disturb a final judgment rendered by the wrong court applies as well when a litigant tries to raise the question via an interlocutory appeal. We have not permitted interlocutory appeals to raise the question of wrong court jurisdiction, any more than we have considered it error on appeals from final judgments.[3]
In Canzeneuve v. Curell, 70 Miss. 521, 13 So. 32 (1893), the chancellor overruled a demurrer (same as a motion to dismiss) because the bill "showed no equity," i.e. was brought in the wrong court. The chancellor did permit an appeal, however, to settle the principles of the case. And, on appeal this Court held the chancery court was without jurisdiction.
*221 In interpreting § 147, among other things we stated:
And this Court is forbidden to reverse or annual decrees or judgments rendered in the lower courts, even if there was want of jurisdiction, if no other error than want of jurisdiction is to be found.
70 Miss. at 524, 13 So. at 33.
What did we say 96 years ago about the majority's argument today that § 147 applies only to final judgments, and when the 1890 Constitution was new?
It may be thought by some that the supreme court is forbidden to reverse only final judgments or decrees, where error from want of jurisdiction appears. But the all-sufficient answer to this suggestion is, that the framers of the constitution, with a clear apprehension of the distinction between final and interlocutory decrees and judgments, declare that no decree shall be reversed because of want of jurisdiction in the lower court. There is nothing to even suggest that only decrees or judgments determining and settling the merits, were included in this constitutional provision. We are not to arbitrarily interpolate qualifying words or expressions to limit a constitutional inhibition. The language is plain, unambiguous, all-comprehensive. The purpose of this section of the constitution is to prevent reversals because of want of jurisdiction in the court below. In other words, a decree or judgment, in all other respects correct, shall not be reversed simply because the right decree or judgment has been rendered or pronounced in the wrong court. If the final decree or judgment cannot, in such case, be annulled or reversed by us, if the laborious result of protracted litigation, in its completed finality, cannot be reviewed by us, what reason can be assigned for holding that an interlocutory order  a single step in the progress of the completed litigation  may be reversed or annulled by this court? Rather, it must not be held that, if the final decree or judgment, the perfected product of the litigation, is irreversible here when the only error is want of jurisdiction in the court below, each step in the course of litigation, resulting in that perfected product, must be held irreversible also. [Emphasis original]
70 Miss. at 525, 13 So. at 33.
Woodville v. Jenks, 94 Miss. 210, 48 So. 620 (1908), was another attempt to have us hear an interlocutory appeal from an order overruling a non-jurisdiction demurrer. We stated:
The demurrer interposed to the bill in this case raises no question, except that the cause is of common-law, and not equity, cognizance. The chancery court, however, overruled the demurrer thereby taking jurisdiction. Under section 147 of the Constitution of 1890 this court is powerless to reverse for this cause. Nor do we think we are authorized, as urged by counsel, to enter an order here transferring the cause to the circuit court. Such a procedure is for the chancery court.
94 Miss. at 211, 48 So. at 620.
Metzger v. Joseph, 111 Miss. 385, 71 So. 645 (1916), was still another attempt at an interlocutory appeal from an order overruling a no-jurisdiction demurrer. The late Justice Stevens stated:
[W]hen the chancery court has jurisdiction of the parties and has assumed jurisdiction of the subject matter, this constitutional provision must be construed to mean exactly what it says, and absolutely to forbid a reversal simply because the complainant has misjudged his forum. Much valuable time of litigants and the courts is wasted in a preliminary contest over jurisdiction before the real merits of the litigation are reached. [Emphasis added]
111 Miss. at 338, 71 So. at 647.
Then there was Yazoo Delta Mortgage Co. v. Hutson, 140 Miss. 461, 106 So. 5 (1925), in which the chancellor overruled a no-jurisdiction demurrer. We held:
[T]he ground of the demurrer to the bill of complaint is that the cause of action sued on is one cognizant only in a court of law; but, since the court below assumed jurisdiction thereof, its act in so *222 doing cannot here be considered, under section 147 of the Constitution.
140 Miss. at 466, 106 So. at 5.
Engleburg v. Tonkel, 140 Miss. 513, 106 So. 447 (1925), was another attempted interlocutory appeal over this identical question. We concluded:
[T]he Constitution gives chancery courts the power, if it chooses so to do, to try and determine purely legal causes, and their decrees in such causes will not be reversed on appeal unless there be other error on the face of the record. For aught that it is shown by the record in this case, the chancery court may have determined to assume jurisdiction, notwithstanding there was no equity on the face of the bill. It follows from these views that the decree complained of must be affirmed, and the cause remanded.
140 Miss. at 524, 106 So. at 5.
In Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927), another attempt to appeal from an interlocutory order of the chancery court, we stated:
[I]t was held in the Canzeneuve Case that the prohibition of the Constitution was not confined to final judgments or decrees, but applied also to appeals from interlocutory decrees involving the question whether the cause was one of equity or law jurisdiction.
147 Miss. at 189, 113 So. at 433.
Is Canzeneuve v. Curell, supra, respectable authority? It has been cited as recently as Penrod Drilling Co. v. Bounds, 433 So.2d 916, 923 (Miss. 1983); McLean v. Green, 352 So.2d 1312, 1314 (Miss. 1977). And, in Taylor v. Hines, 221 Miss. 759, 74 So.2d 834 (Miss. 1954), the chancellor overruled demurrers based in part on the ground that the cause was cognizable only in a court of law, but granted an interlocutory appeal to settle all the principles of law involved and to avoid expense. We held:
Under Section 147 of the Constitution of 1890 we would not be justified in reversing the case because of want of jurisdiction in the chancery court, if such were the case, on the ground that the complainants may have had an adequate remedy at law to enforce their alleged laborers' lien. Day v. Hartman, 74 Miss. 489, 21 So. 302, Engleburg v. Tonkel, 140 Miss. 513, 106 So. 447; Dinsmore v. Hardison, 111 Miss. 313, 71 So. 567; Woodville v. Jenks, 94 Miss. 210, 48 So. 620; and in Canzeneuve v. Curell, 70 Miss. 521, 13 So. 32.

* * * * * *
In the instant case, the chancellor overruled the demurrers and thereby retained jurisdiction to try the case on its merits, and his failure to transfer the case to the circuit court does not constitute reversible error, even if he had been requested to transfer the same. [Emphasis added]
221 Miss. at 765, 74 So.2d at 836.
And, what does the majority say about this unbroken, consistent line of authority that the Court cannot hear an interlocutory appeal based upon the claim it was being heard in the wrong trial court?
The majority does cite and quote from one case, Canzeneuve v. Curell, supra, but tells us, "We have come a long way since Canzeneuve." Then it proceeds to ignore the six other cases: Woodville v. Jenks; Metzger v. Joseph; Yazoo Delta Mortgage Co. v. Hutson; and Taylor v. Hines, supra. I wonder why.
The "authorities" the majority does cite are either so non-supportive or far afield I find it somewhat discomfiting to discuss them.
In citing Whitney v. Hanover National Bank, 71 Miss. 1009, 15 So. 33 (1894), as authority, the majority fails to inform us that this Court affirmed a chancery court's setting aside absolutely void proceedings, in which no court would have been authorized to proceed. The opinion clearly states that when either a circuit or a chancery court had jurisdiction, no error could be predicated because the wrong one assumed it. Speaking of § 147, Whitney held:
Because of that section, error is not predicable of "any error or mistake as to whether the cause in which it was rendered *223 was of equity or common law jurisdiction." "No judgment or decree in any chancery or circuit court, rendered in a civil cause, shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction," is the mandate of the fundamental law, and sweeps away all distinction between equity and common law jurisdiction, after it has been entertained, in a civil cause in the chancery or circuit court. It may be an action of criminal conversation, or libel or slander or trespass, or any other civil cause in the chancery court, or an equity matter in a court of law, if entertained there, error is not predictable, and the decree or judgment shall not be annulled for want of jurisdiction. The chancellor or circuit judge conclusively and finally settles the question of jurisdiction, as between equity or common law jurisdiction, of the particular case ...
71 Miss. at XXXX-XXXX, 15 So. at 36-37.
Hawkins v. Scottish Union & National Insurance Co., 110 Miss. 23, 69 So. 710 (1915), deals with a statute of limitations setting the time for bringing a suit after a prior suit has been dismissed. It is of absolutely no benefit to the majority. Indeed, the decision quotes with approval from Whitney, that Section § 147 "sweeps away all distinction between equity and common-law jurisdiction, after it has been entertained, in a civil cause in the chancery or circuit court." [Emphasis added] 69 So. at 712.
The majority quotes from the dissent in Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927), and neglects to tell us that the majority opinion holds that the prohibition of § 147 applies "also to appeals from interlocutory decrees involving the question of whether the cause was one of equity or law jurisdiction." 147 Miss. at 189, 113 So. at 433.
Murphy v. City of Meridian, 103 Miss. 110, 60 So. 48 (1912), has no application whatever to the question as to whether there may be an interlocutory appeal from a chancellor's denial of a motion to transfer to circuit court. Instead, it deals with a chancellor's dismissal of a case, rather than transferring it, after he had determined the case belonged in circuit court.
Robertson v. F. Goodman Dry Goods Co., 115 Miss. 210, 76 So. 149 (1917); Reed v. Charping, 201 Miss. 477, 29 So.2d 271 (1947); and Fortenberry v. Wilkerson, 222 Miss. 70, 75 So.2d 274 (1954), cited by the majority, likewise do not involve the question of this case. These cases announce the principle that where a chancery court wrongfully or erroneously entered an order (1) transferring a cause to circuit court, and (2) the case involves equitable remedies and relief which cannot be obtained in a court of law, thereby (3) causing an injustice which cannot be corrected on appeal, then § 147 does not prevent our hearing and remanding to the chancery court, whether the case was before us on a final judgment or an interlocutory appeal granted by the chancellor.
What has that got to do with the question whether this court can grant an interlocutory appeal because the chancery court entertained and retained jurisdiction? Nothing. Indeed, the late Justice Stevens, the author of the above principle which was first set out in Robertson v. F. Goodman Dry Goods Co., supra, was also the author of Metzger v. Joseph, supra, holding § 147 prohibited us hearing wrong court interlocutory appeals, as well as reversing a final judgment because the wrong court heard the case. One need not wonder why the Court in Robertson v. F. Goodman Dry Goods Co., supra, did not overrule or even seek to distinguish the two cases. It is quite obvious Justice Stevens saw no conflict whatever between the two holdings, and understood they were talking about entirely different situations.
As to Robertson v. Evans, 400 So.2d 1214 (Miss. 1981), the final citation of authority of the majority that § 147 is no impediment to its action, in that case the defendant petitioned this Court for an interlocutory appeal because the chancellor overruled, with no attempt at justification *224 whatever, a motion to dismiss a personal injury lawsuit arising from an automobile accident at a street intersection.
In that case we did not grant, we denied the petition for appeal. We did tell the chancellor he was wrong and should transfer the cause. There we recognized our appellate limitation of transferring the cause on our own. In this case, over a minority of this Court's strenuous objection, we granted the interlocutory appeal, and reverse the chancery court order, and on our own remand the case to the circuit court of Adams County.
Where did the majority get this idea that "we have come a long way since Canzeneuve"? Not from our previous decisions. The great distance to which the majority refers has been traveled since the majority got this case. Why doesn't the majority be straightforward and candid and overrule these cases which hold precisely opposite what the majority now holds? Let us at least be honest.
The judicial footing for the majority's holding is the thin air.
There is one rationale for this decision as to which the majority is silent. This is the urge for power. Of recent years we have engaged in matters heretofore considered foreign to our appellate function. Hall v. State, 539 So.2d 1338 (Miss. 1989), being one egregious example. Also, Southern Farm Bureau Cas. Ins. v. Holland, supra. Now, a trial judge is going to have to worry about the hovering presence of this Court, looking over his shoulder (not being satisfied to await the normal appeal process), and ready to yank a case away from his court because of a perceived mistake he makes during the progress of trial proceedings. It does not matter that it could be fully corrected on appeal, or that it might not even be considered as error on appeal, we can reach down and yank a case away from the trial court. Under our Constitution we are a court of appeals, Article 6, § 146, not a straw boss supervisor or umpire of trial court proceedings.
The majority may make as many high-blown pronouncements as it pleases, but the bottom line of its holding today is that the criterion for granting or denial of an interlocutory appeal is no more than the fancy of one or more members of this Court.
Trial judges cannot look otherwise than with extreme aversion over their prospects.

CHANCELLOR WAS JURISDICTIONALLY CORRECT IN RETAINING CAUSE
My major problem with the majority has been stated. Ordinarily, I would not discuss the minor premise in this case that the chancellor was absolutely correct, in the first place, in retaining the cause. The majority's reasoning here also is so bolixed, however, that it is tantalizing.
As I have stated, under the well-pleaded allegations, which were all the chancellor was required to consider, Johnson & Knight v. Hinds County, supra, the chancellor was manifestly correct. The majority, to support it decision, has gone beyond the pleadings.
There is also this additional reason, completely ignored by the majority, which the chancellor gave for keeping this case. The complaint asked for punitive damages. The chancellor cited Tideway Oil Programs, Inc. v. Serio, supra, which constitutes clear support, because in that case this Court held that a claim for punitive damages in and of itself was sufficient to give a chancery court jurisdiction.
The majority tells us that a "good reason" for this Court to transfer the cause to circuit court is that the defendant demanded a trial by jury, which will be denied him in chancery court. (Pp. 214-215, Majority Opinion) It neglects to tell us that in Tideway the same majority held that a chancellor was superior to a jury in determining whether to assess punitive damages.
Let us briefly review the history of punitive damages in chancery court.
In repeated cases this Court held the chancery court was without power to award punitive damages. Subscribers Casualty Reciprocal Exchange v. Totaro, 370 So.2d 1342 (Miss. 1979); Gulf Steamship Companies v. Polk, 370 So.2d 1348 *225 (Miss. 1979); Carl v. Craft, 258 So.2d 237, 241 (Miss. 1972); Avant v. Whitten, 253 So.2d 394, 396 (Miss. 1971); Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d 624, 626 (1965); Wilborn v. Balfour, 218 Miss. 791, 806, 67 So.2d 857, 864 (1953). This line of decisions culminated in Thompson v. First Mississippi Nat. Bank, 427 So.2d 973 (Miss. 1983), where we emphatically held that the chancery court was without power to award punitive damages.
One month later the same majority in Tideway Oil, supra, held that indeed the chancery court did have power to award punitive damages, and overruled all previous decisions to the contrary, including the fresh, ink-wet[4]Thompson v. First Mississippi Nat. Bank, supra. Tideway Oil made such statements as:
[I]t is difficult to image a more appropriate forum for the litigation of such volatile and sensitive matters [punitive damages] than the chancery court.
431 So.2d at 461.
Our chancellors are charged with granting that relief which equity and good conscience require. There will be rare cases where the conduct of the defendant is so outrageous that an assessment of punitive damages ought to be made. It would be peculiarly [in]appropriate that a judge charged to act in accordance with equity and good conscience may not hear and adjudicate such claims. This is particularly so in this day when many feel that more than an occasional plaintiff recklessly demands punitive damages at law, hoping that he can move a jury to give him that windfall which in equity and good conscience he ought not to have. [Brackets ours]
* * * * * *

We hold that claims for punitive damages lie within the subject matter jurisdiction of the chancery courts of this state. We rely in no part upon notions of pendent jurisdiction en route. [Emphasis added]
431 So.2d at 646.
Even with these observations, the majority in Tideway Oil was not through with the matter. Recognizing the country lawyer's philosophy of draftsmanship that "it don't hurt to say the same thing more than once," the majority did indeed want to say the same thing again. The majority quoted from Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179, 181 (1965), as authority for the proposition that when the chancery court has jurisdiction to hear one of the disputed issues, it can take jurisdiction to hear all issues in the case, known as pendent jurisdiction. Then we said it again that a chancery court did not have to have pendent jurisdiction to hear punitive damages.
[W]e go the further step, however, and hold that notions of pendent jurisdiction are unnecessary to our decision. We hold that our chancery courts have actual, not just pendent, subject matter jurisdiction over claims for punitive damages. [Emphasis added]
431 So.2d at 464.
How anyone can read Tideway Oil, supra, and not conclude this Court has held that if you have a bona fide case entitling you to punitive damages you are entitled to file your suit in chancery court escapes me.
The late Justice Broom in a cogent, brief and gentlemanly dissent warned us that in so doing we were depriving parties of a right to a trial by jury guaranteed by § 31. He concluded:
Serious procedural problems can be foreseen which make the majority action fraught with peril in future cases. Due to the very nature of chancery practice, chancellors may be flooded with an avalanche of claims for punitive damages which will obscure the main thrust of chancery litigation.
My view is that such changes should not be wrought by judicial fiat of this Court without allowing the bench, bar *226 and citizenry of the state to present their views by some manner or means. Action which results in abridgement of the sacred right to jury trial is more suitably accomplished by our lawmakers: the members of the Mississippi Legislature.
431 So.2d at 468.
The majority in Tideway Oil, supra, is authority for a circuit judge, when there has been a claim for punitive damages, transferring the action to chancery court.
In this case the plaintiff demanded $500,000 actual and $8,000,000 in punitive damages. If he prevails in his suit that the defendant acted recklessly or maliciously, or both, clearly he is entitled to have the trier of fact consider punitive damages as well as actual damages.
In Tideway the majority held that a chancellor was superior to a jury in considering whether punitive damages should be assessed, and if so the amount, than a jury. Now, this same majority tells us that the defendants should have a jury on damages, citing Article 3, § 31 of our Constitution. Of course, if the majority in Tideway had heeded Justice Broom, who also cited § 31, we would not be faced with this problem. Instead, the majority then ignored § 31 because it suited its purposes to do so, just as it is now emasculating § 147. Had the law remained as it was for at least two centuries prior to Tideway, the plaintiff would not have filed suit in chancery court, because in doing so it would have meant he could never recover a penny in punitive damages, regardless of his entitlement.
Decisions from this Court should be hallmarks of caution, clarity and consistency.

A MINORITY PROPOSAL
The tangle the majority has created suggests an alternative solution. Article 3, Section 31 of our Constitution states that the "right of trial by jury shall remain inviolate."[5]
Despite § 31, this Court by ancient precedent has repeatedly held that there is no Constitutional right to a jury trial in a chancery court case, and that even where the chancellor grants a jury trial, its verdict is advisory only. Louisville & N.R. Co. v. Hasty, 360 So.2d 925 (Miss. 1978); McLean v. Green, 352 So.2d 1312 (Miss. 1977); Illinois Central R. Co. v. McDaniel, 246 Miss. 600, 151 So.2d 805 (1963); Matthews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957); Laub v. Reason, 217 Miss. 475, 64 So.2d 637 (1953); Bland v. Bland, 105 Miss. 478, 62 So. 641 (1913); Boyd v. Applewhite, 121 Miss. 879, 84 So. 16 (1920); Studdard v. Carter, 120 Miss. 246, 82 So. 70 (1919); State v. Marshall, 100 Miss. 626, 56 So. 792, 797 (1911); Carradine v. Carradine, 58 Miss. 286, 293 (1880); Cook's Heirs v. Bay, 5 Miss. 485 (1840). And, of course, Talbot & Higgins Lumber Co. v. McLeod Lumber Co., supra. Also, Griffith's Chancery Practice, § 597. This has been true even though there has been a statute in effect since 1880 which gives parties in a "necessary and proper" case the right to a jury trial, and there is nothing about its language which suggests the verdict is less than binding upon the presiding chancellor. Miss. Code Ann. § 11-5-3.[6]
As fixed as this rule has been, this Court has from time to time manifested discomfort with it. Studdard v. Carter, supra; J. Patterson in Fowler v. Fisher, supra; dissent in Griffin v. Jones, 170 Miss. 230, 154 So. 551 (1934). And, in Talbot & Higgins Lumber Co. v. McLeod Lumber Co., supra, 147 Miss. at 209-210, 113 So. at 437, Justice Ethridge eloquently dissented over the denial of a jury trial when the case was properly one of circuit court subject matter jurisdiction. The conclusion of this dissent is set forth in Appendix A.
*227 In my view, at the very least that litigant who has been required to defend an action in chancery court on issues more appropriately addressed to a court of law has the Constitutional right under § 31 to demand a jury trial as to such issues with the same force and effect of a jury sitting in circuit court, and this applies to punitive damages as well, I would specifically overrule all cases which deny a litigant in a case such as this the right to a trial by jury as guaranteed under § 31.
It was not the Constitution which granted chancery courts power to hear punitive damage claims, nor was it the Legislature. It was this Court in Tideway Oil, supra, which added the exposure of chancery court imposition of punitive damages. Having inflicted this upon the litigants of this state, it is particularly harsh to also hold that a party subject in chancery court to a punitive damages suit may not also, if he desires, have a jury decide the question, just as he could in circuit court.
And, just as we did in Robertson v. Evans, supra, I would dismiss this interlocutory appeal and remand this cause to the chancery court, with the further holding that if the chancellor chooses to retain jurisdiction the defendants have an inviolate right under § 31 to demand a jury trial which is not simply advisory, but with all the force, dignity and validity of a jury in circuit court.
In this manner we do not toss § 147 into the shredder, and are giving force and meaning to § 31.
DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ., join this opinion.

APPENDIX A
I regret exceedingly to see these securities of the people impaired, and regret to see a construction placed upon our Constitution which will enable a chancellor to override the Constitution at will. A chancellor of course, is like other men, subject to the same imperfections that every man is subject to. He has his prejudices and is unable to rise above them completely, and these prejudices will evidently be felt and seen in the decree, although he is unconscious thereof.
Trial by jury has long been cherished as one of the greatest securities of human rights, as is shown whenever excessive tyranny has undertaken to trample the people under its feet. Venerable institution and friend of the common people, you have had a long and useful life! For more than a thousand years you have stood as a knight of honor, guarding the people's rights and redressing their wrongs! You have limited the power of rules and modified the austerities of legislation! You have tempered justice with mercy and technicality with common sense! You have been the master of despots and the counselor of Legislatures! You have been the guardian and best friend of liberty through thousands of years! Where you have existed, there liberty has survived the onslaught of its foes. Where you have not lived, there tyranny has ruled the people with an iron hand and trampled their rights in the dust of degradation! You have been the most valiant and successful defendant of the citadels of freedom! But the day of your destiny has ended and the star of your fate has declined! From your lofty standing, you have been hurled down to be trodden upon by the mighty chancellor! Like Humpty Dumpty, you have had a great fall! Like the ... gelded hog, you have lost your standing in the community! You have been emasculated in the sanctum sanctorum of the temple of liberty! Like Caesar, you have been wounded by those you thought were your best friends! From now on, instead of being a captain to command, you have been relegated to the position of mere adviser to the chancellor and your advice may be disregarded and your counsel spurned, and it will be on many occasions, I deeply regret your misfortune and the state's vanishing rights. May God, in his wisdom, cause you to be re-established in your former position of umpireship in the courts where the rights of men are in dispute. *228 Talbot & Higgins Lumber Co. v. McLeod Lumber Co., supra, 147 Miss. at 209-210, 113 So. at 440-441.
NOTES
[1] The Mississippi Rules of Civil Procedure place no new categories or types of civil actions within the subject matter jurisdiction of our several trial courts. The Rules do, however, make clear that more may be done than was allowable before January 1, 1982, with actions already within a given court's jurisdiction.
[2] Section 31 is of no effect in chancery. Of course, in a case such as this, the chancery court has discretionary authority to impanel a jury. If one is impaneled, however, our law is clear that "its findings are totally supervisory." Louisville & Nashville Railroad Co. v. Hasty, 360 So.2d 925, 927 (Miss. 1978); McLean v. Green, 352 So.2d 1312, 1314 (Miss. 1977); Griffin v. Jones, 170 Miss. 230, 233-34, 154 So. 551, 552 (1934); Griffith, Mississippi Chancery Practice § 597 (2d ed. 1950). Indeed, anomaly attends the suggestion that the chancery court here impanel a jury as the raison d'etre of Anders' suing in chancery is his view that his action's complexity places it well beyond a jury's ken.
[3] The brief filed on behalf of Appellant Anders makes no mention of Section 147.
[4] This inconsistency, of course, has been eviscerated by the advent of interlocutory appeals from circuit court. See Rule 5(a), Miss.Sup.Ct. Rules, and Comment thereto; Kilgore v. Barnes, 490 So.2d 895, 896 (Miss. 1986).
[5] In an unrelated point, the Court in Robertson inadvertently mis-spoke itself. The opinion reads that the Court is "denying the petition for interlocutory appeal" and then remanding the case to the Circuit Court. Obviously, the Court would have had no authority to do anything other than leave the judgment of the lower court intact if the petition for interlocutory appeal had been denied. The correct reading of Robertson should be that the Court granted the petition for interlocutory appeal and then remanded the case to the Circuit Court.
[6] Consider hypothetically a case where a plaintiff has battled for many months and secured a partial summary judgment on liability, i.e., "some other substantial advantage," only to have the defendant seek an interlocutory appeal belatedly challenging subject matter jurisdiction. Such a jurisdictional challenge may work a great unfairness, well within the policy that justifies today's majority and consistent in principle with our holding. A part of our context is that points of subject matter jurisdiction may not be waived and may be asserted at any time. Matter of Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss. 1987); Home Insurance Company v. Watts, 229 Miss. 735, 753, 93 So.2d 848, 850 (1957). Nothing in today's case requires that we seek the great divide between orders not precluded from reversal by Section 147 and those which are, nor whether that divide is but a twilight zone, neither is it appropriate this day that we hold the bar of Section 147 limited exclusively to final judgments or decrees. Authoritative exposition of such points we leave for the proper case or cases.
[7] See note 3, supra.
[8] We find apt the Court's expression in Magee v. Griffin, 345 So.2d 1027, 1032 (Miss. 1977):

There is a tendency, perhaps, to forget that one who undergoes the rigors of an action, with all of its traumatic impact, loss of time, delay, substantial expense and disruption of his affairs, with consequent appeals and possible retrials and still other appeals, should be spared having to do this more often than is strictly necessary. Even the successful party after bearing the expense of one trial and of one appeal is, in many instances, hardly a winner.
[9] If we dismiss the action, in all probability any new filing would be barred by the statute of limitations. See Miss. Code Ann. § 15-1-35 (Supp. 1988).
[1] Section 147. No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction, but if the Supreme Court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to the court which, in its opinion, can best determine the controversy.
[2] Cases cited in footnotes 2-3, pp. 419-420, Vol. I. of Code: Adams v. Capital State Bank, 74 Miss. 307, 20 So. 881 (1896); Walley v. L.N. Dantzler Co., 114 Miss. 601, 75 So. 433 (1917); Yazoo Delta Mortg. Co. v. Hutson, 140 Miss. 461, 106 So. 5 (1925); Day v. Hartman, 74 Miss. 489, 21 So. 302 (1896); Engleburg v. Tonkel, 140 Miss. 513, 106 So. 447 (1925); Carter v. Witherspoon, 156 Miss. 597, 126 So. 388 (1930); Irion v. Cole, 78 Miss. 132, 28 So. 803 (1900); Dinsmore v. Hardison, 111 Miss. 313, 71 So. 567 (1916); Metzger v. Joseph, 111 Miss. 385, 71 So. 645 (1916); Wroten v. Fenn, 203 Miss. 361, 35 So.2d 534 (1948); Atkinson v. Felder, 78 Miss. 83, 29 So. 767 (1900); Woodville v. Jenks, 94 Miss. 210, 48 So. 620 (1908); Decell v. Hazlehurst Oil Mill & Fertilizer Co., 83 Miss. 346, 35 So. 761 (1904); Barrett v. Carter, 69 Miss. 593, 13 So. 625 (1891); Holmes v. Ferguson-McKinney Dry Goods Co., 86 Miss. 782, 39 So. 70 (1905); Canzeneuve v. Curell, 70 Miss. 521, 13 So. 32 (1893); Grenada Lumber Co. v. State, 98 Miss. 536, 54 So. 8 (1910); Dukate v. Adams, 101 Miss. 433, 58 So. 475 (1911); Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927); Russ v. Stockstill, 155 Miss. 368, 124 So. 359 (1929); Rankin v. Ford, 160 Miss. 802, 134 So. 178 (1931); Sovereign Camp, W.W. v. Durr, 186 Miss. 850, 192 So. 45, 125 A.L.R. 702 (1939); Anderson v. Robins, 161 Miss. 604, 137 So. 476 (1931); Ringold v. Goyer Co., 164 Miss. 261, 144 So. 706 (1932); Minter v. Hart, 208 So.2d 169 (1968).

And, annotated in the supplement: McLean v. Green, 352 So.2d 1312 (Miss. 1977); Louisville & Nashville R. Co. v. Hasty, 360 So.2d 925 (Miss. 1978); Volkswagen of America, Inc. v. Novak, 418 So.2d 801 (Miss. 1982); Ivy v. Illinois Central G.R. Co., 510 So.2d 520 (Miss. 1987).
[3] Until quite recently an interlocutory appeal was very rare, anyway. Once upon a time interlocutory appeals were restricted to a statute which permitted only the chancery court, in rare and exceptional instances, to allow interlocutory appeals when necessary to settle the principles of a case. Miss. Code Ann. § 11-51-7. Even when the chancellor allowed one, we would dismiss it if improvidently granted. State Highway Comm. v. Patrick, 248 Miss. 201, 157 So.2d 645 (1963); Nash v. Winter, 235 Miss. 330, 109 So.2d 336 (1959). The wisdom of the statute and our decisions were disregarded in Southern Farm Bureau Cas. Ins. v. Holland, 469 So.2d 55 (Miss. 1984).
[4] Here I borrow a metaphor from the majority (P. 216, Majority Opinion, in speaking of Canzeneuve), which metaphor, incidentally, was borrowed by the majority from a previous dissent of mine to the previous majority opinion in this case.
[5] Article 3, Section 31 reads in full:

Section 31. The right of trial by jury shall remain inviolate, but the legislature may, by enactment, provide that in all civil suits tried in the circuit or chancery courts, nine or more jurors may agree on the verdict and return it as the verdict of the jury.
[6] In special cases involving will contests, a right to a jury trial is specially granted by statute in which the jury verdict is binding upon the chancellor, the same as a jury verdict would be in circuit court. Miss. Code Ann. §§ 91-7-23, 91-7-29; Fowler v. Fisher, 353 So.2d 497 (Miss. 1977).